LINDA AND STEVEN GLOWSKI

v.

ALLSTATE INSURANCE COMPANY

April 26, 1991

*Devine & Nyquist*, of Manchester (*Corey Belobrow* on the brief and orally), for the plaintiffs.

*Wiggin & Nourie*, of Manchester (*Gregory A. Holmes* and *Mary Ann Mueller* on the brief, and *Ms. Mueller* orally), for the defendant.

## MEMORANDUM OPINION

BATCHELDER, J. The plaintiffs, Linda and Steven Glowski, appeal the decision of the Superior Court (*Dalianis*, J.), denying their motion for summary judgment in a declaratory judgment action seeking uninsured motorist coverage from an automobile policy issued to them by the defendant, Allstate Insurance Company (Allstate). The defendant cross-appeals, arguing that the trial court erred when it applied New Hampshire law to the construction of a New York insurance policy and when it found uninsured motorist

coverage under the Allstate policy. For the reasons that follow, we reverse and remand.

On January 18, 1984, Linda Glowski, a New York resident, was injured in an automobile accident in Chichester, New Hampshire. She was a passenger in a vehicle driven by Virginia Fitts, a New Hampshire resident, which crashed into a snow bank. The accident resulted from a maneuver by the operator as she attempted to avoid an approaching vehicle driven by Janine Morgado, also a New Hampshire resident.

Virginia Fitts was insured by GEICO Insurance Company (GEICO), with uninsured motorist coverage limits of $25,000 per person. GEICO has paid the Glowskis $5,000 in full settlement of its share of the uninsured motorist claim. Janine Morgado was insured by Maine Bonding and Casualty Company (Maine Bonding), which paid the full amount of its liability policy of $100,000 to the Glowskis. The Glowskis' automobile insurance policy with Allstate, purchased by them in New York, provides a $100,000 per person limit under its underinsured motorist coverage. The availability of this coverage is the issue in this appeal.

Allstate argues that New York law governs the construction of its policy because the policy was issued in New York to New York residents. The Glowskis contend that the policy should be construed according to the law of New Hampshire. The policy itself is silent on the choice-of-law issue. The trial court applied the choice-influencing considerations adopted by this court in *Clark v. Clark*, 107 N.H. 351, 353–55, 222 A.2d 205, 208–09 (1966), and ruled that New Hampshire law should apply. However, *Clark* and its progeny tend to be more appropriate authority when the court is faced with the issues presented in a tort action, while the concerns in a contract case focus on the predictability aspect of *Clark* and lend themselves, therefore, to a more mechanical analysis.

■■ This case presents an opportunity for us to clarify the appropriate analysis to apply when considering a choice-of-law question in cases such as this one. In *Clark v. Clark supra*, this court adopted the five "choice-influencing considerations" first enunciated by Professor Leflar in his seminal article *Choice Influencing Considerations in Conflicts Law*, 43 N.Y.U.L. REV. 267 (1966), but a review of our decisions shows that our analysis has evolved from that starting point. *See* Comment, *New Hampshire's Evolving Conflict of Laws Doctrine—From Clark v. Clark to Maguire v. Exeter and Hampton Electric Co.*, 17 N.H.B.J. 43 (1975). Our post-*Clark* deci-

sions, particularly in contracts cases, have relied upon the approach taken by the Restatement (Second) of Conflict of Laws, which is that the law of the State with the most significant relationship to the contract will govern questions regarding the contract's performance. *See New England Merchants Nat'l Bank v. Lost Valley Corp.*, 119 N.H. 254, 256, 400 A.2d 1178, 1180 (1979); *Currier v. Tuck*, 112 N.H. 10, 11, 287 A.2d 625, 627 (1972); *Consolidated Mut. Cas. Co. v. Radio Foods Co.*, 108 N.H. 494, 496, 240 A.2d 47, 49 (1968). However, adoption of the Second Restatement position does not suggest that a *Clark* analysis is no longer applicable. Rather, it is a recognition that, for specific problems, the "choice-influencing considerations" do not provide enough guidance to reach the correct result. Because predictability of results, the first *Clark* factor, is perhaps of greatest concern in contracts cases, the adoption of the more mechanical approach of the Second Restatement is appropriate in those cases. In actual fact, the policy behind the Second Restatement substantially mirrors those considerations contained in Leflar's work. Particularly in the context of insurance contracts, we have found that the State which is the "principal location of the insured risk" bears the most significant relationship to the contract, in the absence of an express choice of law by the parties. *Ellis v. Royal Ins. Co.*, 129 N.H. 326, 331, 530 A.2d 303, 306 (1987).

■ Applying this approach to the contract before us, we hold that the trial court erred in applying New Hampshire law. New York law should have been applied to the interpretation of the Allstate contract, because New York was the "principal location of the insured risk." *Ellis supra.* The issue here is whether a New York resident can recover from her New York insurance company under a contract written and delivered in New York. The fact that the underlying accident occurred in New Hampshire should not affect the availability of coverage under the policy.

■ The interpretation of the law of a foreign jurisdiction is a question of fact and not of law. *Baribault v. Robertson*, 82 N.H. 297, 298, 133 A. 21, 21 (1926). Accordingly, we remand to the superior court for action consistent with this opinion.

*Reversed and remanded.*

All concurred.