Hancock, Jr., J.
(dissenting). Even though the argument was not advanced in Supreme Court or the Appellate Division, the majority of this Court now concludes that the controlling case of Matter of United Community Ins. Co. v Mucatel (127 Misc 2d 1045, affd without opn 119 AD2d 1017, affd for reasons stated at Special Term 69 NY2d 777) does not apply; that there never was any conflict between New Jersey and New York law; and that the reduction in coverage clause was valid all along in either State. Having thus removed both the controlling New York decision and the conflicts issue from the case, the majority simply enforces the reduction in coverage clause to reduce the Stolarzes’ recovery by $20,000. Although holding that no conflicts issue obtains, the majority nevertheless addresses the conflicts point as a hypothetical question and declares the Appellate Division analysis to be in error.
I believe that there was unquestionably a conflict of laws and that the Appellate Division decided the matter correctly using the grouping of contacts approach and properly applied the settled New York Mucatel rule to invalidate the reduction in coverage clause and award the Stolarzes the full liability limit of $35,000. In its holding that Mucatel does not apply, the majority effectively overrules that decision. The result is that the Stolarzes are retroactively deprived of contractual rights to recover the full insurance limits to which they were entitled under the Mucatel rule when the accident happened in February 1989. Because we were not asked to overrule Mucatel and no reason is given for doing so or for depriving the Stolarzes of their rights, I dissent.
*230 I.
The majority offers two bases for its conclusion that under New York as well as New Jersey law the reduction in coverage clause is valid: (1) that because the underinsured coverage and the uninsured coverage are combined in the same endorsement, Mucatel is distinguishable; and (2) that a regulation of the Superintendent of Insurance (11 NYCRR 60-2.1 [c]), while not directly abrogating our holding in Mucatel, nevertheless compels the conclusion that Mucatel does not apply. Neither proposition withstands analysis.
That uninsured and underinsured coverages are combined and offered in one endorsement instead of in two separate endorsements is irrelevant. The form of the endorsement is of no significance. All that matters is the type of insurance triggered by the particular accident — uninsured or underinsured motorist coverage. In this case, two separate and distinct types of insurance coverage[1] are provided in one endorsement to the Stolarzes as insureds to cover two separate and mutually exclusive contingencies: that the insureds are injured by a car that has no insurance or injured by a car that has some insurance, but in an amount less than the declared limit of the insureds’ endorsement. But only one kind of coverage per accident can be invoked in a combined uninsured/ underinsured endorsement, depending entirely on whether the offending vehicle is covered by some insurance or none. Obviously, an offending vehicle cannot, under the very definitions of the terms in the endorsements, be both uninsured and underinsured at the same time. It must be emphasized that only when the offending vehicle has some insurance and the underinsurance facet of the endorsement is invoked does the reduction in coverage clause — held invalid in Mucatel —operate.
The majority’s argument that the mere combining of both coverages in one instrument in some way obviates the effect of the Mucatel holding misses the point of that decision. Here, as *231 in Mucatel, the validity of the reduction in coverage clause, not the endorsement, is in issue. In a claim for underinsurance — in which the reduction in coverage clause operates— the insurer pays only the stated underinsurance limit on the covered vehicle minus the primary liability limit of the other vehicle. The insurer never pays the full underinsurance coverage as stated in the declaration page of the policy.[2] Because of this discrepancy between the stated amount of underinsurance coverage ostensibly provided by the policy and the lesser amount actually recoverable, the Mucatel court held the reduction in coverage clause to be misleading and, therefore, void.
The majority’s sole basis for distinguishing Mucatel depends on the fact that uninsured as well as underinsured coverage happens to be combined in one endorsement. It points out that under the New Jersey Manufacturers Insurance Company (NJM) endorsement when the insured is injured by a vehicle with no insurance, the insured will be paid the full amount of coverage provided in the endorsement. Thus, the argument goes, the significant aspect of the Mucatel holding — that the full amount of the coverage under the endorsement will never be paid — does not pertain. The majority’s effort to distinguish Mucatel is ineffectual, however, because the only circumstance when the full liability limits can be recovered is when the uninsured — not the underinsured — coverage is invoked. Then, of course, the reduction in coverage clause, held void in Mucatel, does not apply at all.
The majority’s argument, simply stated, is that because the endorsement provides parallel uninsured coverage, which is not affected by the void reduction in coverage clause, the reduction in coverage clause somehow becomes valid when applied to underinsurance. The fallacy in the majority’s proffered distinction is clearly illustrated when the present case is taken as an example. If the Stolarzes’ underinsurance coverage had been provided in a single endorsement, the reduction in coverage clause would have been held invalid under Muca *232 tel and they would have received the full amount, $35,000. But because uninsured coverage was also provided in the same endorsement and the Stolarzes might have recovered the full $35,000 of uninsured coverage had they been injured by a car with no insurance, the reduction in coverage clause becomes valid and the $20,000 James settlement is deducted from the Stolarzes’ $35,000 of underinsurance. If there is any plausible reason for reaching these diametrically opposite results merely because the two types of coverage are provided on the same page, the majority does not explain it.
The majority offers a second basis for its proposition that the reduction in coverage clause is valid under New York as well as New Jersey law and that, therefore, the case presents no conflict of laws issue: that a regulation of the Superintendent of Insurance adopted in July 1992 (11 NYCRR 60-2.1 [c]), more than three years after the accident, somehow abrogates or modifies the Mucatel holding. To be sure, NJM does not argue, and the majority purportedly does not hold, that the Superintendent’s regulation should be given retrospective effect in overruling a decision of this Court and thus retroactively depriving the Stolarzes, as insureds, of contractual rights to the full coverage amount vested in February 1989. In Mucatel our Court established a rule of contract law: reduction in coverage clauses because of the way they operate on underinsurance provisions are, as a matter of New York law, void. The majority apparently concedes that the Superintendent of Insurance has no authority to overrule a decision of this Court in contract law, a field embedded in common law which is uniquely within the province of the courts. Certainly, the Superintendent could not do so retroactively (see, 4 Davis, Administrative Law Treatise § 20:7 [estoppel from retroactive lawmaking] [2d ed]; Matter of CNA Ins. Cos. [Grandstaff], 188 AD2d 965 [relying on Mucatel’s holding after 11 NYCRR 60-2.1 (c) went into effect to conclude that reduction in coverage clauses were void]).
Nevertheless, the majority gives what amounts to retroactive effect to the Superintendent’s regulation. It does so not by treating the regulation as overruling Mucatel but by concluding that "[t]he Superintendent of Insurance has determined that such clauses [held misleading by this Court in Mucatel] are not misleading, and this is persuasive authority” (majority opn, at 224 [emphasis added]). The majority does not explain how it can adopt the Insurance Superintendent’s ruling as "persuasive authority” (id.) on the legal question of whether *233 reduction in coverage clauses are void in New York in lieu of a directly contrary decision of the New York Court of Appeals on the same question without overruling that decision. The majority’s citation of Matter of Kransdorf v Board of Educ. (81 NY2d 871) is equally puzzling. In Kransdorf we gave due deference to a decision of the Commissioner of Education on a question of interpretation of the Education Law. Here, of course, the issue does not involve statutory interpretation but the application of a clearly stated rule of New York common law enunciated by our Court to the effect that reduction in coverage clauses are void as misleading.
Both before and after Mucatel, New York courts have ruled that reduction in coverage clauses are void and unenforceable (see, Matter of Federal Ins. Co. v Reingold, 181 AD2d 769, 771; Garry v Worldwide Underwriters Ins. Co., 120 Misc 2d 91, 93, affd 101 AD2d 717; Passaro v Metropolitan Prop. & Liab. Ins. Co., 128 Misc 2d 21, affd on opn below 124 AD2d 647; see especially, Matter of CNA Ins. Cos. [Grandstaff], 188 AD2d 965, supra [relying on Mucatel’s holding after the effective date of the insurance regulation 11 NYCRR 60-2.1 (c) to conclude that reduction in coverage clauses were void]). There are no cases to the contrary. The practical result of today’s decision — that Mucatel does not apply because the endorsement includes both uninsurance and underinsurance and because of the "persuasive authority” of the Superintendent’s recently adopted regulation — can be nothing other than the sub silentio overruling of Mucatel.
II.
Because the majority’s reversal is based on its conclusion that there is no conflict of laws here, an extensive discussion of that issue is not necessary. I believe the unanimous Third Department was unquestionably correct in holding that under a grouping a contacts analysis New York law was the proper choice. The conflict between New York and New Jersey law arises from NJM’s insistence that the reduction in coverage clause can be enforced in New York in the face of this Court’s ruling that such a clause is void under New York law. Since this is an issue of contract enforcement between the Stolarzes as insureds and NJM — turning only on whether New York decisional law (i.e., Mucatel) should be given effect to invalidate the reduction in coverage clause — a grouping of contacts analysis demonstrates, on established authority, that New *234 York law should apply (see, e.g., Auten v Auten, 308 NY 155, 160; Intercontinental Planning v Daystrom, Inc., 24 NY2d 372, 382-383 [holding New York law the proper choice in dispute over enforcement of contract made in New Jersey and invalidating contract under the New York Statute of Frauds]; Babcock v Jackson, 12 NY2d 473, 481; Colonial Penn Ins. Co. v Minkoff, 40 AD2d 819, affd 33 NY2d 542; Borg-Warner Corp. v Insurance Co., 174 AD2d 24, 29).
The majority, while ostensibly agreeing with the Appellate Division’s use of a grouping of contacts, appears to apply the traditional and outmoded lex loci contractus and, relying on New Amsterdam Cas. Co. v Stecker (3 NY2d 1), concludes that the law of New Jersey, not New York, is the proper choice. But this conclusion is based on a mistaken premise: that the dispute involves a question of contract interpretation between NJM and Kathleen Stolarz’ employer, Blue Cross. Neither Blue Cross nor the owner/lessor of the company car used by Kathleen Stolarz is a party to this proceeding. Neither has any apparent interest in the outcome of the dispute. Nor is there any question about what the reduction in coverage clause, or the underinsured motorist endorsement, or any other provision of the policy means. The dispute is exclusively between the Stolarzes, both of whom are insureds under the NJM policy, and NJM. The sole question is whether New York case law should be given effect to invalidate the reduction in coverage clause or whether that clause should be enforced against them despite New York’s declared interest in protecting its residents from the harmful effect of the clause it has declared void.
Because the issue is one of contract enforcement, not a dispute between the contracting parties pertaining to its interpretation, the place where the contract was made is of relatively little significance in a grouping of contacts analysis (see, Auten, supra, at 160; Restatement [Second] of Conflict of Laws § 188, comment e). The contact of prime significance— one not even alluded to by the majority — is the location of the risk insured against: the place where an accident triggering the underinsured motorist coverage of the NJM policy would most likely occur (see, Colonial Penn Ins. Co. v Minkoff, supra, at 819 [grouping of contacts "rule requires courts to apply the law of the State which the parties understood would be the principal location of the insured risk” (id.)]; Borg-Warner Corp. v Insurance Co., supra, at 29 [in a conflict of laws question involving the pollution exclusion clause in an insurance pol *235 icy, weight given in choosing New York law to New York as the place of greatest insurance risk because 7 of the 19 hazardous waste sites at issue were located there]; Wille v Farm Bur. Mut. Ins. Co., 432 NW2d 784 [Minn Ct App] [in applying Minnesota law to void the antistacking provision in an Iowa underinsured motorist endorsement, the court stated: "the (insurance) company knows the automobile is a movable item * * * driven from state to state * * * (and) therefore, accepts the risk that the insured may be subject to liability not only in the state where the policy is written” (id., at 786)]; Glowski v Allstate Ins. Co., 134 NH 196, 589 A2d 593 [in applying law of insured’s residence and of principal location of the risk in dispute concerning uninsured/underinsured coverage, court stated: "(p)articularly in the context of insurance contracts, we have found that the State which is the 'principal location of the insured risk’ bears the most significant relationship to the contract, in the absence of an express choice of law by the parties” (id., 134 NH, at 198, 589 A2d, at 595)]).
Here, the principal location of the insured risk was in New York. Kathleen and John Stolarz lived in New York. The company car was garaged at their residence in New York. Certainly, NJM was charged with knowledge that Blue Cross had entrusted the car to its employee, Kathleen Stolarz, for use in New York and that there was a likelihood that any accident involving the car would occur in New York. Ultimately, of course, the accident triggering the Stolarzes’ claims did happen in New York. Significantly, Insurance Law § 3420 (h) defines the term "risk located in the state” as including "any vehicle which is principally garaged or principally used in this state” (emphasis added). The only place where the company car was garaged was in New York. That fact alone locates the risk in New York. The company car was principally used in New York. And, that fact, too, is enough to place the risk in New York. The majority, however, without explanation, simply ignores the location of the risk in New York as a contact of major significance. In failing to address the issue as one of enforcing the Stolarzes’ rights to invalidate the reduction in coverage clause and treating this case instead under a lex loci contractus analysis as though it involved some undefined question of interpretation between NJM and Blue Cross, the majority avoids mention of Insurance Law § 3420 (h) and Colonial Penn Ins. Co. v Minkoff (supra), and the other cases emphasizing the primary importance of the place of risk.
Moreover, there are other New York contacts. The accident *236 involved another car driven by a New York resident insured in New York. The dispute over the enforceability of the reduction in coverage clause arose in a New York litigation which originally involved Allstate’s coverage under another automobile insurance policy issued in New York to the Stolarzes. In view of the Stolarzes’ New York residence and New York’s obvious interest in assuring that its law is applied to protect New York residents in contract enforcement issues (see, Auten, supra, at 162; Daystrom, supra, at 387-388; Borg-Warner, supra, at 29; Restatement [Second] of Conflict of Laws § 188, comment e) the Appellate Division properly concluded that New York was the place "most intimately concerned with the outcome of the case at issue” (Matter of Allstate Ins. Co. [Stolarz-N. J. Mfrs. Ins. Co.], 178 AD2d 899, 900).
The majority’s reliance upon Stecker (supra) is misplaced. Unlike the case here, Stecker did not involve a question of contract enforcement but a question of contract interpretation and whether there was any coverage at all under a New York insurance policy incorporating the 1937 amendments to the predecessor to New York Insurance Law § 167 (3), which excluded coverage when one spouse sued another for bodily injuries resulting from an automobile accident. The Court reached its result not by applying a grouping of contacts analysis but by relying on the outmoded and less flexible lex loci contractus rule embraced in the Restatement (First) of Conflict of Laws § 332 (see, Stecker, supra, at 5). While the basis of the Stecker Court’s decision was lex loci contractus, the Court’s opinion emphasized that the application of New York law at that time furthered the then existing and now outmoded New York interest in totally prohibiting inter-spousal insurance coverage so as to protect insurers from allegedly collusive litigation (see, Stecker, supra, at 6-8). By the same token the Appellate Division’s application of New York law under a grouping of contacts analysis similarly furthers an important interest of New York — protecting New York insureds from the adverse effects of void reduction in coverage clauses as explained in Mucatel (supra).
I respectfully dissent and would affirm the order of the Appellate Division.
Judges Simons, Titone, Bellacosa and Smith concur with Chief Judge Kaye; Judge Hancock, Jr., dissents and votes to affirm in a separate opinion.
Order reversed, etc.

. That the uninsured and underinsured coverages are separate and distinct is apparent from the mutually exclusive definitions of these terms in the endorsement and also from the provisions of the controlling New Jersey statute, which states: "Underinsured motorist coverage shall not apply to an uninsured motor vehicle” (NJ Stat Annot § 17:28-1.1 [e] [1]). " 'Uninsured motor vehicle’ shall not include an underinsured motor vehicle” (id.., § 17:28-1.1 [e] [2]). Also, New York law distinguished uninsured motorist coverage from underinsured motorist coverage (see, Insurance Law § 3420 [f] [1], [2]).

. As the Mucatel court explained, for a policy having an underinsured coverage in the declared amount of $25,000, the "insurer will not pay the amount stated on the face of the declaration but only $15,000 (for a New York insured vehicle) and $10,000 (for a New Jersey insured vehicle). In no event, irrespective of the State of registration of the offending vehicle, will the carrier providing the underinsured coverage ever pay the amount indicated on the policy declaration. This is both misleading and ambiguous” (Mucatel, supra, at 1046).