Coopers & Lybrand v. Bailey Man.      CV-94-393-JD  06/13/95

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Coopers & Lybrand Limited, et al.

    v.                                    Civil No. 94-393-JD

Bailey Manufacturing Corp.


O R D E R


The plaintiff, Coopers & Lybrand Limited ("C & L"), as receiver and manager for Knapp Plastics Limited Partnership ("Knapp"), filed this lawsuit to recover for monies owed under an agreement with defendant Bailey Manufacturing ("Bailey") for the manufacture of plastic automobile components.  Before the court is the plaintiff's motion regarding choice of law (document no. 12).


Background

Bailey is a Delaware corporation which maintains its principal place of business in Seabrook, New Hampshire.  Knapp is a Canadian limited partnership with a principle place of business in Leamington, Ontario, Canada.  During the early 1990s Knapp failed to perform under one or more security agreements with Barclays Bank of Canada and, in February 1993, C & L was named receiver.  C & L is a Canadian corporation with a principal place of business in Windsor, Ontario.

Knapp molds and packages plastic automotive parts to the specifications requested by its customers. Knapp completes this work in Canada. According to the plaintiff, in February 1992, Bailey management contacted Knapp management to solicit a price quote for the molding and packaging of certain parts Bailey needed in connection with one of its projects. Plaintiff's Memorandum of Law in Support of Motion for Choice of Law ("Plaintiff's Choice of Law Memorandum") at 2. During the months that followed the parties negotiated a consignment agreement under which Bailey would ship raw materials to Canada where Knapp would process the materials and ship the completed product back to Bailey's facility in Seabrook, New Hampshire. Id. at 2; Complaint at ¶ 10.

At some point the parties discussed amending the terms of the agreement such that Knapp would actually purchase the raw materials from Bailey and, following processing, re-sell the completed product back to Bailey. The parties disagree on the result of these negotiations, with Bailey claiming it entered into a contract for the sale of goods while the plaintiff maintains that Knapp only performed services under some form of a consignment arrangement.[1]

_____

[1]A reasonable reading of the parties' motions and supporting memoranda indicates that Knapp and Bailey may have consummated transactions based on several different types of agreements, some

2

Whatever the terms, Knapp and Bailey engaged in a series of transactions beginning in 1992 and continuing after the plaintiff was named receiver of Knapp in February, 1993. Complaint at ¶ 9. In the course of at least some of these transactions Bailey supplied information to Knapp on a pre-printed purchase order form. Defendant's Memorandum at ¶ 7. The back side of this form contains a variety of "conditions of purchase" provisions, including:

**16. APPLICABLE LAW**
This purchase order shall be construed and governed according to the laws of the State of New Hampshire.

Defendant's Memorandum, Exhibit B.

## Discussion

consignment, some purchase and sale, and others a hybrid arrangement under which some goods and materials were sold while others were merely transported for processing. According to the defendant:

Some of the Purchase Orders Bailey issued to Knapp for the production of automobile parts included the price of materials for the manufacturing. Other purchase orders Bailey issued to Knapp did not include material costs and instead required Knapp to perform certain molding processes with materials supplied by Bailey. Some of Knapp's invoices to Bailey included the cost of materials which Knapp had incorporated into the finished goods. Other Knapp invoices included only the cost of the molding process without materials costs.

Defendant's Memorandum in Opposition to Plaintiff's Motion ("Defendant's Memorandum") at ¶ 3.

3

In its motion, the plaintiff asserts that Knapp and Bailey never expressed an understanding of whether New Hampshire or Canadian law would control disputes arising out of their dealings.  Plaintiff's Motion Regarding Choice of Law ("Plaintiff's Motion") at ¶ 8.  Given the absence of a contractual choice-of-law provision, the plaintiff argues that, under New Hampshire choice-of-law principles, the substantive law of Canada should apply because "Canada is the jurisdiction with the most significant relationship to the contract at issue."  Id. at ¶¶ 9, 10.[2]

The defendant agrees that the court should employ New Hampshire choice-of-law principles to determine which body of substantive law will govern this case.  Defendant's Objection to Motion Regarding Choice of Law ("Defendant's Objection") at ¶¶ 4, 5.  However, the defendant asserts that the choice-of-law provision stipulating New Hampshire law, included on the back

---

[2]The plaintiff further argues that Canadian law should control because it is unfamiliar with New Hampshire law and is a Canadian corporation appointed receiver under Canadian law following Knapp's breach of a security agreement with a Canadian bank.  Plaintiff's Motion at ¶ 10(d).  These arguments are not relevant to the instant motion.  First, this case has no connection to the security agreement or receivership except to the extent that C & L has assumed whatever rights and liabilities Knapp possessed relative to Bailey.  Second, even though C & L may be unfamiliar with New Hampshire law, its local counsel has demonstrated familiarity with state law by virtue of filing this lawsuit and subsequent motions in accordance with local law and procedure.

4

side of its pre-printed purchase order form, became binding on Knapp once Knapp "accepted the terms of the Bailey purchase orders by producing and shipping the goods to Bailey." <u>Id.</u> at ¶ 11. The defendant further asserts that New Hampshire has the most significant relationship to the contracts in dispute. <u>Id.</u> at ¶¶ 12, 13.

Under New Hampshire law,

> [w]here parties to a contract select the law of a particular jurisdiction to govern their affairs, that choice will be honored if the contract bears any significant relationship to that jurisdiction.

<u>Allied Adjustment Serv. v. Heney</u>, 125 N.H. 698, 700, 484 A.2d 1189, 1191 (1984) (citing Restatement (Second) of Conflict of Laws ("Second Restatement") § 187); <u>see</u> <u>Ferrofluidics Corp. v. Advanced Vacuum Components</u>, 968 F.2d 1463, 1467 (1st Cir. 1992) (New Hampshire rule "echoes" Restatement view). Moreover, a "party's incorporation in a state is a contact sufficient to allow the parties to choose that state's law to govern their contract." <u>Id.</u>, 968 F.2d at 1467-68 (quoting <u>Carlock v. Pillsbury Co.</u>, 719 F. Supp. 791, 807 (D. Minn. 1989); citing Second Restatement § 187, comment f (fact that one party is domiciled in chosen jurisdiction provides "reasonable basis" for their choice)).

In contrast, where the parties to an agreement do not designate which body of law should govern contractual disputes,

5

the "law of the jurisdiction with the most significant relationship to the contract normally applies." Id., 968 F.2d at 1467 (citing Consolidated Mut. Ins. Co. v. Radio Foods Corp., 108 N.H. 494, 496, 240 A.2d 47, 49); see Glowski v. Allstate Ins. Co., 134 N.H. 196, 197-98, 589 A.2d 593, 595 (1991); Second Restatement § 188(1). The court considers the basic choice-of-law principles adopted by the Restatement of Conflicts of Law when determining which jurisdiction bears the most significant relationship to the dispute. See Glowski, 134 N.H. at 198, 589 A.2d at 595.[3] In addition, five specific factors are examined

_____

[3] According to the Restatement,

(2) The factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems;
(b) the relevant policies of the forum;
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
(d) the protection of justified expectations;
(e) the basic policies underlying the particular field of law;
(f) certainty, predictability and uniformity of result; and
(g) ease in the determination and application of the law to be applied.

Second Restatment § 6.

when determining which law governs the rights and duties of a parties to contract:

> (a) the place of contracting;
> (b) the place of negotiation of the contract;
> (c) the place of performance;
> (d) the location of the subject matter of the contract; and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Second Restatement § 188(2). In addition, when construing service contracts the Restatement suggests application of "the local law of the state where the contract requires that the services, or a major portion of the services, be rendered . . . ." Id. at § 196.

Finally, in contract cases where the Restatement's choice-influencing approach does not provide enough guidance to reach a correct result, New Hampshire courts apply the factors announced by the supreme court in Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966). Glowski, 134 N.H. at 197-98, 589 A.2d at 595. The factors are: (1) the predictability of results; (2) the maintenance of reasonable orderliness and good relationships among the states in the federal system; (3) simplification of the judicial task; (4) the advancement of the governmental interest of the forum; and (5) the court's preference for what it regards as the sounder rule of law. Sinclair v. Brill, 815 F. Supp. 44, 46 (D.N.H. 1993); Keeton v. Hustler Magazine, 131 N.H. 6, 14,

7

549 A.2d 1187, 1192 (1988) (citing <u>LaBounty v. American Ins. Co.</u>, 122 N.H. 738, 741, 451 A.2d 161, 163 (1982); <u>Clark</u>, 107 N.H. at 353-55, 222 A.2d at 208-09). Although the court considers each of the <u>Clark</u> factors, "[o]bviously, some of them will be more relevant to some type of cases, less to other types." <u>Ferren v. General Motors Corp.</u>, 137 N.H. 423, 425, 628 A.2d 265, 267 (1993) (quoting <u>Clark</u>, 107 N.H. at 353-54, 222 A.2d at 208).

The court's choice of law analysis is constrained by the skeletal factual record presented by the parties. Resolution of the underlying dispute in this case will require a determination of whether a contract existed between the parties, what terms were included in any such contract and, finally, whether the conduct of the parties comported with or were in breach of their agreement(s). Although "the interpretation of a contract is generally a question on law for the court," factual disputes involving the existence and terms of a contract are submitted to the jury. <u>E.g.</u>, <u>Great Lakes Aircraft Co. v. City of Claremont</u>, 135 N.H. 270, 286-87, 608 A.2d 840, 851 (1992) (quoting <u>Peabody v. Wentzell</u>, 123 N.H. 416, 418, 462 A.2d 105, 107 (1983)).

The court must make a threshold choice-of-law determination without resolving matters properly submitted to a jury, such as the question of whether the purchase order constituted an agreement between the parties. As a result, the court at this

8

juncture cannot place weight on the provisions on the back of the purchase order and, thus, the determination of which jurisdiction bears the most significant relationship to the dispute is guided by those factors applicable to cases where the parties have _not_ previously agreed on which body of law will govern.

Application of the five contract factors outlined in the Restatement reveals that in most respects New Hampshire and Canada bear an equal relationship to the contract.  See Restatement (Second) § 188(2).  Bailey resides in New Hampshire while Knapp resides in Canada.  The agreement was negotiated by officials of each company in the jurisdiction of their respective place of operations.  The subject matter of the contract, the plastic automobile components, was shipped from New Hampshire in the form of raw materials, processed and molded in Canada, and, in turn, returned to New Hampshire.  To the extent the agreement called for the performance of services, as opposed to the purchase of goods, the major portion of the services was rendered in Canada.  See id. at § 196.

The court, guided by what is an approximately equivalent relationship between the jurisdictions under section 188(2), finds that the basic conflict of law principles outlined in

9

subsections a through f of section 6(2) are neutral factors.[4]
However, the section 6 factor requiring a consideration of the
"ease in the determination and application of the law to be
applied" militates that the court apply the substantive law of
New Hampshire with which it is most familiar.  Id. at § 6(2)(g).

Although the consideration of the Restatement factors,
supra, favors slightly the application of New Hampshire law, the
choice of law question in this case is sufficiently close to
warrant a further analysis consistent with Clark v. Clark and its
progeny.

The first Clark factor, predictability of results, is not
instructive because there is no indication in the record that
either party agreed to or otherwise possessed a justifiable
expectation of which law would govern disputes.  See Ferren, 137
N.H. at 426, 628 A.2d at 267-68 (quoting Clark, 107 N.H. at 354,
222 A.2d at 208); Keeton, 131 N.H. at 17, 549 A.2d at 1194

---

[4]The court has reviewed the motions and memoranda filed by
each party and, based on its review, concludes that neither
jurisdiction has a strong policy interest in the application of
its law that would be contravened or disrupted by the application
of the other jurisdiction's law.  See Restatement §
6(2)(a),(b),(e).  Likewise, because each jurisdiction has roughly
the same connection to the circumstances of this case and one of
the parties, the court finds that neither the reasonable
expectations of the parties, the predictability of result, nor
the interests of a given jurisdiction would be disrupted by
application of the other jurisdiction's law.  See id. at §
6(2)(c),(d),(f).

(Application of this factor "emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset").[5]

The second factor, reasonable orderliness and good relationships among the states, is also a neutral factor because both New Hampshire and Canada possess a "substantial connection with the total facts and with the particular issue being litigated." Ferren, 137 N.H. at 426-27, 628 A.2d at 268 (quoting Clark, 107 N.H. at 354, 222 A.2d at 208); see Keeton, 131 N.H. at 18, 549 A.2d at 1194.

The third factor, simplification of the judicial task, requires the forum court to determine whether it would be easier "to apply its own substantive law than another state's law, because it understands its own law better and therefore can do a better job of administering justice under it." Clark, 107 N.H. at 354, 222 A.2d at 208. This factor, like its Restatement analogue, section 6(2)(g), strongly favors application of New Hampshire contract principles because the court is naturally more familiar with the law of this state than that of a foreign jurisdiction.

---

[5]The court notes that the application of New Hampshire law to this case cannot be viewed as unexpected to the extent that the plaintiff, a Canadian corporation appointed receiver for a Canadian partnership, elected to file a lawsuit in a New Hampshire court.

The fourth factor, advancement of the forum state's governmental interest, requires the court to examine the competing bodies of substantive law and determine whether application of another state's law would compromise or contravene New Hampshire's interests and public policies. See, e.g., Ferren, 137 N.H. at 428, 628 A.2d at 268-89. The final factor, the sounder rule of law, requires the court to examine the competing bodies of substantive law and to select the "better rule" to govern the case at bar. E.g., Clark, 107 N.H. at 355, 222 A.2d at 209. Neither party has briefed the related questions of which Canadian contract principles would apply to this dispute and whether the application of such principles would be antagonistic to New Hampshire public policy. "[W]here there is no evidence of foreign law, it is presumed to be in accord with New Hampshire common law." Cove-Craft Industries v. B.L. Armstrong Co. Ltd., 120 N.H. 195, 199, 412 A.2d 1028, 1030 (1980) (citing Garapedian Inc. v. Anderson, 92 N.H. 390, 31 A.2d 371 (1943)). Based on the record before it, the court finds that the contract law of Canada and New Hampshire promote similar policies and would in this case yield similar results.

Following application of both the Restatement and the Clark considerations, the court concludes that the substantive law of

12

New Hampshire will govern the rights and liabilities of the parties relative to the transactions and agreements in dispute.

## Conclusion

The plaintiff's motion for choice of law (document no. 12) is denied.  New Hampshire law will govern this case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

June 13, 1995

cc:  Margaret-Ann Moran, Esquire
     Peter F. Kearnes, Esquire

13