Doyle v. Hoyle                          CV-94-244-SD   12/14/95
                    UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


Diana F. Doyle,
 individually and as
 Trustee of DDN Realty Trust

        v.                                      Civil No. 94-244-SD

Wayne F. Hoyle;
Hoyle Insurance Agency;
Insurance Company of North America


                            O R D E R


     This diversity action is brought by plaintiff Diana F. Doyle

against Hoyle Insurance Agency, Inc., and its president, Wayne F.

Hoyle.[1]  Plaintiff seeks to recover in tort and contract for

injuries sustained as a result of defendants' failure to provide

fire loss and liability insurance for plaintiff's New Hampshire

property.

     Presently before the court is defendants Hoyle and Hoyle

Insurance Agency's motion to dismiss the claim brought under the

Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A

(chapter 93A), and plaintiff's objection thereto.  The gravamen

of defendants' motion is that Massachusetts law does not govern

_____

     [1]Subsequent to the filing of defendants' motion to dismiss,
plaintiff amended the complaint to include the Insurance Company
of North America as a defendant.

this action.

1.  Background

In December 1992 plaintiff, a resident of Rhode Island, purchased an apartment building in Littleton, New Hampshire, and retained Donald McStay to manage the property.[2]  McStay's duties included obtaining insurance coverage for the building.

In order to obtain insurance coverage for the Littleton property, McStay contacted defendant Wayne F. Hoyle at the Hoyle Insurance Agency in Wrentham, Massachusetts.  Plaintiff alleges that McStay "acquired a fire loss and liability protection binder on the Littleton property" from Hoyle that "was effective for one year, commencing on December 29, 1992."  Complaint ¶¶ 8-9. Plaintiff further alleges that "in several conversations with McStay from December 1993 through February 1994, defendant Hoyle assured McStay that a fire loss and liability protection insurance policy was forthcoming and that the Littleton property continued to be covered."  Id. ¶ 12.

On February 9, 1994, the Littleton property was destroyed by fire.  After receiving notification of the fire loss, Hoyle

_____

[2]In October 1993 plaintiff conveyed the property to DDN Realty Trust, an express trust of which plaintiff is the sole trustee and beneficiary.  After the transfer, McStay retained his position as manager.

2

Insurance Agency allegedly advised plaintiff's mortgagee that a premium notice for an insurance policy on plaintiff's Littleton property had been mailed to McStay on November 24, 1993, and that the policy was canceled on January 28, 1994, due to nonpayment of the premium. Complaint ¶¶ 15, 18. Plaintiff alleges that the premium was mailed to the wrong address by the Hoyle Insurance Agency and that neither plaintiff nor McStay received the premium notice. Id. ¶¶ 15-16.

Plaintiff now brings suit against the defendants for breach of contract, breach of express warranty, negligence, negligent and intentional misrepresentation, and violation of chapter 93A, which prohibits unfair and deceptive trade practices.

## 2. Discussion

### a. Judgment on the Pleadings Standard

Under Rule 12(c), Fed. R. Civ. P.,[3] "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is

---

[3]Defendants do not specify which subsection of Rule 12 (12(b)(6) or 12(c)) governs their motion. However, as defendants filed an answer to the complaint, the court will treat the motion as a Rule 12(c) motion for judgment on the pleadings. See, e.g., Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (defendant's post-answer Rule 12 motion treated as motion for judgment on the pleadings).

essentially the same as the standard for evaluating a Rule 12(b)(6) motion." Metromedia Steakhouses Co., L.P. v. Resco Management, 168 B.R. 483, 485 (D.N.H. 1994) (citation omitted). "In reviewing the defendants' motion for judgment on the pleadings . . . the court must accept all of the factual averments contained in the complaint as true and draw every reasonable inference helpful to the plaintiff's cause." Sinclair v. Brill, 815 F. Supp. 44, 46 (D.N.H. 1993) (citing Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991)); see also Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("because rendition of judgment in such an abrupt fashion represents an extremely early assessment of the merits of the case, the trial court must accept all of the nonmovant's well-pleaded factual averments as true and draw all reasonable inferences in his favor") (citations omitted).

Even then, judgment may not be entered on the pleadings "'"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."'" Rivera-Gomez, supra, 843 F.2d at 635 (quoting George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2d Cir. 1977) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957))).

4

<u>b.  Choice of Law</u>

Defendants first argue that plaintiff's claim under the Massachusetts Consumer Protection Act should be dismissed because under choice-of-law principles New Hampshire law governs.[4]

To determine what state law applies, a federal court sitting in diversity jurisdiction should examine the choice-of-law standards of the forum state, in this case, New Hampshire.  <u>See</u> <u>Crellin Technologies, Inc. v. Equipmentlease Corp.</u>, 18 F.3d 1, 4 (1st Cir. 1994) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 387, 491 (1941)).  For tort claims,[5] New Hampshire favors a fluid inquiry influenced by the following factors:

> (1) predictability of results; (2) maintenance of reasonable orderliness and

---

[4]The court need not rule on a choice-of-law question if the ultimate result would be the same regardless of which law is applied.  <u>See, e.g.</u> <u>Fashion House, Inc. v. K Mart Corp.</u>, 892 F.2d 1076, 1092 (1st Cir. 1989) (interpreting Rhode Island law) (citing <u>Hart Eng'g Co. v. FMC Corp.</u>, 593 F. Supp. 1471, 1477 n. 5, 1481 (D.R.I. 1984)).  Defendants fail to show how chapter 93A materially differs from the New Hampshire Consumer Protection Act, Revised Statutes Annotated (RSA) 358-A.  As such, the court could reject defendants' argument on this basis alone.

[5]A chapter 93A claim should be treated as a tort for choice-of-law purposes when the claim and the requested remedy are "highly analogous to a tort claim and remedy."  <u>Crellin</u>, <u>supra</u>, 18 F.3d at 11.  The court has previously examined the allegations of the chapter 93A claim, as well as the remedies sought therein, and has ruled that they are comparable to those of a tort claim.  <u>Doyle v. Hoyle</u>, No. 94-244-SD, slip op. at 9-10 (D.N.H. Mar. 14, 1995).  Accordingly, the choice-of-law standards applicable to tort claims will guide the determination of what law governs the chapter 93A claim.

> good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law.

Ferren v. General Motors Corp., 137 N.H. 423, 425, 628 A.2d 265, 267 (1993) (citing Clark v. Clark, 107 N.H. 351, 354-55, 222 A.2d 205, 208-09 (1966)); accord LaBounty v. American Ins. Co., 122 N.H. 738, 741, 451 A.2d 161, 163 (1982) ("In a choice-of-law question, this court has rejected the traditional lex loci delicto rule that the law of the forum where the injury occurs is paramount and instead has considered five choice-influencing considerations . . . ."). As not every factor will be equally relevant to every type of case, Ferren, supra, 137 N.H. at 425, 628 A.2d at 267, the court may accord greater weight to the more compelling considerations.

The first consideration, predictability of results, involves determining which law would likely be the choice of the parties, in light of their justifiable expectations. See Clark, supra, 107 N.H. at 354, 222 A.2d at 208. This factor has particular significance when "consensual transactions" are at issue because "'it is important that parties be able to know in advance what law will govern a transaction so that they can plan it accordingly.'" LaBounty, supra, 122 N.H. at 742, 451 A.2d at

6

163 (quoting <u>Clark</u>, <u>supra</u>, 107 N.H. at 354, 222 A.2d at 208).
Consideration of this factor also helps assure that decisions of
law are uniform throughout all forums.  <u>See</u> <u>Ferren</u>, <u>supra</u>, 137
N.H. at 425, 628 A.2d at 267 (citing <u>Clark</u>, <u>supra</u>, 107 N.H. at
354, 222 A.2d at 208).

Although there are meritorious arguments favoring the
application of New Hampshire law,[6] the more predictable result is
that Massachusetts law would govern a tort claim arising from the
alleged unfair or deceptive trade practices of the defendants.
Doyle's chapter 93A claim is based on a series of contacts
between Doyle's agent, McStay, and defendant Hoyle from December
1993 to February 1994.  Plaintiff alleges that Hoyle made a
number of false assurances to McStay that the New Hampshire
property was covered by fire loss and liability insurance and
that the policy would be forthcoming.  Complaint ¶¶ 12, 27.  The
parties agree that all communications between McStay and Hoyle
occurred in Massachusetts.  <u>See</u> Objection at 5, 9; Defendants'

---

[6]Defendants note that New Hampshire law would surely govern
interpretation of the insurance policy because New Hampshire was
the "'principal location of the insured risk.'"  <u>See</u> <u>Glowski v.</u>
<u>Allstate Ins. Co.</u>, 134 N.H. 196, 198, 589 A.2d 593, 595 (1991)
(citing <u>Ellis v. Royal Ins. Co.</u>, 129 N.H. 326, 331, 530 A.2d 303,
306 (1987)).  However, it does not necessarily follow that New
Hampshire must also govern plaintiff's tort claims.

Motion at 8. Defendant Hoyle Insurance allegedly mailed (or claimed to have mailed) an insurance premium notice to plaintiff via McStay at McStay's Massachusetts office, which was never received. Complaint ¶ 15. Finally, McStay allegedly relied on defendants' representations in carrying out his duties in Massachusetts of "retaining and maintaining proper insurance coverage for the Littleton property." Complaint ¶ 7.[7] Given the preponderance of contacts with Massachusetts, the parties could justifiably have expected Massachusetts to provide the governing law.

Another important consideration is the advancement of the forum's governmental interest. Ferren, supra, 137 N.H. at 425, 628 A.2d at 267. New Hampshire has some interest in assuring that real property within its borders is adequately insured, as well as in assuring that owners of such properties are not subjected to deceptions. However, New Hampshire's interest does not outweigh Massachusetts' strong interest in curbing the

---

[7]Defendants argue that plaintiff "received and relied on" the alleged deceptive statements outside of Massachusetts because plaintiff resides in Rhode Island and is the trustee of a New Hampshire realty trust. See Defendants' Motion at 8. However, this contention ignores that plaintiff's claim concerns a fraud directed at her agent, McStay. See RESTATEMENT (SECOND) OF AGENCY, § 315 (1957) (a person who fraudulently causes an agent to violate his duty is liable to the principal "whether the fraud is practiced upon the agent or upon the principal").

8

deceptive practices of Massachusetts businesses, particularly where, as here, all of the alleged deceptive communications occurred in Massachusetts. See, e.g., International Fidelity Ins. Co. v. Wilson, 443 N.E.2d 1308, 1318 (Mass. 1983) (noting that the multiple damages provisions of chapter 93A reflect "'the Legislature's displeasure with the proscribed conduct and its desire to deter such conduct and encourage vindicative lawsuits'") (quoting McGrath v. Mishara, 434 N.E.2d 1215, 1222 (Mass. 1982))).

The remaining considerations of the choice-influencing framework do not undermine the court's conclusion that Massachusetts law governs. Massachusetts has sufficient connection with the total facts of this case that it would not threaten the reasonable orderliness or the good relationships among the states to apply the law of the Commonwealth. See LaBounty, supra, 122 N.H. at 742-43, 451 A.2d at 163-64 (good relationship among the states requires no more "than that a court not apply the law of a State which does not have a substantial connection with the total facts and the particular issue being litigated" (citing Clark, supra, 107 N.H. at 354, 222 A.2d at 208)). The considerations of simplification of the judicial task and the court's preference for what it regards as the sounder rule of law have little bearing here given that the New Hampshire

9

Consumer Protection Act essentially mirrors the Massachusetts statute; in fact, New Hampshire courts often use chapter 93A to guide the interpretation of RSA 358-A. See Roberts v. General Motors Corp., 138 N.H. 532, 538-39, 643 A.2d 956, 960 (1994) (noting New Hampshire's frequent reliance on Massachusetts law when interpreting RSA 358-A); Chase v. Dorais, 122 N.H. 600, 602, 448 A.2d 390, 391-92 (1982); accord Curtis Mfg. Co. v. Plasti-Clip Corp., 888 F. Supp. 1212, 1227-28, n.12 (D.N.H. 1994); Donovan v. Digital Equip. Corp., 883 F. Supp. 775, 786 (D.N.H. 1994). In light of the similarity between the statutes, the court cannot find its task would be simplified by applying New Hampshire law, or that New Hampshire provides the sounder rule of law.[8]

Accordingly, for the foregoing reasons, the court rejects defendants' argument that New Hampshire law governs plaintiff's

---

[8]A final minor consideration is that Massachusetts law is supported by the RESTATEMENT (SECOND) CONFLICT OF LAWS. Under the RESTATEMENT, when a plaintiff has suffered pecuniary harm as a result of defendant's false representations, the governing law is generally the state where the misrepresentations were made, received, and relied upon--in this case, Massachusetts. See RESTATEMENT (SECOND) CONFLICTS OF LAW, § 148 (1969). The Supreme Court of New Hampshire does not generally adopt the RESTATEMENT (SECOND). However, when "'choice-influencing considerations' do not provide enough guidance to reach the correct result," the court occasionally recognizes the RESTATEMENT. See, e.g., Glowski, supra note 6, 134 N.H. at 198, 589 A.2d at 595 (applying mechanical approach of RESTATEMENT (SECOND) to determine law applicable to insurance contract claim).

10

claim for alleged unfair and deceptive trade practices.

c. Primary and Substantial Occurrence under Chapter 93A

Defendants next argue that chapter 93A does not apply because the acts and practices alleged to constitute a violation of same did not occur "primarily and substantially" within the Commonwealth, as required by section 11. See Mass. Gen. L. ch. 93A, § 11, as amended by St. 1986, ch. 363, § 4. Defendants bear the burden of proving "a lack of primary and substantial involvement in Massachusetts." See Kansallis Fin. Ltd. v. Fern, 40 F.3d 476, 481 (1st Cir. 1994) (interpreting ch. 93A, § 11, last paragraph).

The Supreme Judicial Court of Massachusetts has eschewed mechanical formulae for determining whether an alleged deceptive or unfair transaction occurs "primarily and substantially" within the Commonwealth. See Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 672 (Mass. 1985). However, when the conduct involves alleged misrepresentations, of particular relevance is where the statements were made, where they were received and acted on, and the location of any loss. See id. Courts subsequent to Bushkin have placed varying importance on these factors. For example, an intermediate Massachusetts court considers where "the preponderance of the wrongful conduct occurred" as well as the

11

location of "the essential elements of the transaction" to be particularly relevant.  Makino, U.S.A., Inc. v. Metlife Capital Credit Corp., 518 N.E.2d 519, 524 (Mass. App. Ct. 1988).  The place of injury, while certainly apposite, is not solely determinative of the question:

> It reads too much into the Bushkin opinion to have it stand for the proposition that the place of injury or loss determines whether actions or transactions occurred primarily and substantially within the Commonwealth. Rather, the decision in Bushkin flowed from the scantiness of activity in Massachusetts, including sustaining of the loss.

Makino, supra, 518 N.E.2d at 523.

The First Circuit, interpreting Bushkin, regards the location of the recipient of the deception at the time of the reliance to be the most crucial factor.  See Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 90 (1st Cir. 1995) (citing Clinton Hosp. Ass'n v. Corson Group, Inc., 907 F.2d 1260, 1265-66 (1st Cir. 1990)).  The site of the loss is also important, while the location of the person making the deceptive statement has the least significance.  Id.

The court finds defendants have not sustained their burden of showing the transaction did not occur primarily and substantially in Massachusetts.  As discussed above, see supra, section 2.b., defendant Hoyle's statements were made in

12

Massachusetts, and plaintiff, through her agent, received and acted on them also in Massachusetts. Not only did the preponderance of the wrongful conduct occur in Massachusetts, and the essential elements of the transaction occur there, see Makino, supra, 518 N.E.2d at 524, but the recipient of the deception at the time of the reliance was also in Massachusetts, see Compagnie De Reassurance, supra, 57 F.3d at 90. Although plaintiff, a Rhode Island resident and trustee of a New Hampshire realty trust, no doubt sustained loss outside Massachusetts, the court finds that this alone does not suffice to overcome the other evidence of a substantial and primary occurrence in Massachusetts.[9]

---

[9]Defendants overly rely on Bushkin, in which the court found the unfair or deceptive acts underlying the chapter 93A claim did not occur "primarily and substantially" within Massachusetts. In Bushkin, the alleged deceptive statements were made in Massachusetts, but were received and acted on in New York, and any loss was incurred in New York. See Bushkin, supra, 473 N.E.2d at 672. As has been discussed above, the statements in the case at bar were not only made in Massachusetts, they were received and acted on in Massachusetts as well.

<u>Conclusion</u>

For the foregoing reasons, the court denies Defendants' Motion to Dismiss Count I of the Complaint (document 30).

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

December 14, 1995

cc:  Edward M. Van Dorn, Jr., Esq.
     Anthony L. Introcaso, Esq.
     Edward P. O'Leary, Esq.
     William D. Pandolph, Esq.

14