Avemco v. Pond                        CV-94-73-B     04/11/96
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE


Avemco Insurance Company

        v.                                Civil No. 94-73-B

J. Lawrence Pond, et al.



                         **O R D E R**

        Avemco seeks a declaratory judgment that the "commercial

purpose" exclusion in its aircraft insurance policy releases it

from a duty to cover claims brought against its insured, Nathan

Pond, arising out of an air show accident.  For the following

reasons, I determine that the exclusion does not bar coverage.



                         **I.  FACTS**

        The parties submitted memoranda of law and an agreed

"Statement of Undisputed Facts" including applicable policy

provisions and interrogatory answers and presented argument at a

hearing on January 18, 1996.  I make the following findings of

fact based upon the parties' "Statement of Undisputed Facts."

Avemco issued an aircraft liability policy to Nathan and Lawrence Pond providing bodily injury and property damage coverage for their Cessna airplane. The policy includes an exclusion that states: "This Policy does not cover **bodily injury, property damage** or **loss:** (1) When **your insured aircraft** is: . . . (b) used for a **commercial purpose.**" "Commercial purpose" is defined in the policy as follows:

> **"Commercial purpose"** means passenger or cargo carrying, flight instruction, rental or other use for which an **insured person** gets money or other benefits. It does not include an **insured person** sharing operating costs of a flight or being reimbursed for a flight that is incidental to his business or job, as allowed a Private Pilot by the Federal Aviation Administration.

The policy was issued and delivered to the Ponds in Connecticut where they kept the airplane.

Nathan Pond occasionally performed in parachuting events at air shows with other family members who were known collectively as the Pond Family Skydivers. Parker Aviation Enterprises, Inc. ("Parker") hired the Pond Family Skydivers to perform in an air show to be held in Lebanon, New Hampshire, on July 24 and 25, 1993. Three members of the Pond Family Skydivers, Nathan, his son Gary, and his nephew Scott, agreed to participate and the Ponds agreed to charge their usual rate of $400.00 per day for

2

three skydivers. Parker also asked the Ponds to arrange for three additional skydivers to perform for an additional charge of $400 per day. The total charge for all six skydivers for both days was to be $1,600.00. Of the $800 that the Pond family skydivers were to receive for their performance, $200.00 was to be used to reimburse Nathan for the use of the airplane, and the balance was to be divided equally among Nathan, Gary, and Scott.

The Ponds planned to use Nathan's airplane, and Nathan arranged for William Batesole to serve as a volunteer pilot. On each day of the show, the airplane was to be used for three to four hours. The average cost of operating the airplane, without considering depreciation or insurance, was approximately $42.00 per hour.[1] The airplane was not to be used to perform any stunts or acrobatic flying either as part of the Pond's performance or in other parts of the show.

During the opening act on July 24, 1993, Scott Pond jumped from Nathan's airplane and collided with a bi-plane operated by Mary McGrath who was also flying as part of the show. Both Scott and McGrath died from injuries they suffered during the accident.

---

[1] For other shows, if the Ponds could not find a volunteer pilot, they rented an airplane at the commercial rate of $100.00 per hour and paid a pilot $25.00 per hour.

3

As a result, claims have been brought against Nathan in an action in this court, Pond v. McGrath, Civil No. 94-225-M. Avemco is defending Nathan in that action under a reservation of rights based on the policy's "commercial purpose" exclusion. The company filed this declaratory judgment action to determine its obligation to defend and indemnify Nathan in the underlying action.

## II. STANDARD OF REVIEW

The parties agree that Connecticut law should be used to construe the terms of the insurance policy because it was issued and delivered in Connecticut to cover an airplane that was usually kept in Connecticut. See Glowski v. Allstate Ins. Co., 134 N.H. 196, 198 (1991). Under Connecticut law, "it is the function of the court to construe the provisions of the contract of insurance." Town of Wallingford v. Hartford Accident and Indem. Co., 649 A.2d 530, 532 (Conn. 1994). "[A]n insurance policy, like any other contract, must be given a reasonable interpretation and the words used are to be given their common, ordinary and customary meaning." Izzo v. Colonial Penn Ins. Co., 524 A.2d 641, 643 (Conn. 1987). Thus, coverage depends on "what

4

a reasonable person in the position of the insured would understand to be covered." Clinton v. Aetna Life & Surety Co., 594 A.2d 1046, 1047 (Conn. Super. Ct. 1991). Further, "when the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." Heyman Assocs. No. 1 v. Insurance Co. of the State of Pa., 653 A.2d 122, 130 (Conn. 1995) (internal quotations omitted). The insurer bears the burden of proving an exclusion of a risk otherwise covered by the policy. Souper Spud, Inc. v. Aetna Casualty & Sur. Co., 501 A.2d 1214, 1217 (Conn. App. 1985), cert. denied, 503 A.2d 172 (Conn. 1986). I apply these standards in determining the meaning of the "commercial purpose" exclusion.

## III. ANALYSIS

The policy's definition of "commercial purpose" includes "other use[s] [of the airplane] for which an insured person gets money" unless the money was reimbursement "for a flight that is incidental to [the insured's] business or job, as allowed a

5

private pilot by the Federal Aviation Administration."[2]  In this case, the $200 Nathan was to receive for the use of his airplane qualifies as a reimbursement because Nathan's actual operating costs for the airplane were greater than $200.  Therefore, the question that must be resolved is whether Nathan's use of his own airplane to transport the Pond Family Skydivers to the jump site reasonably could be considered "incidental" to the skydiving business.  For the reasons that follow, I conclude that the answer to this question is yes.

In ordinary usage, "incidental" means "having a minor role in relation to a more important thing [or] event," The Concise Oxford Dictionary, 597 (8th ed. 1990), or "happening or likely to happen in an unplanned or subordinate conjunction with something else," Random House Unabridged Dictionary, 966 (2d ed. 1993).  If "incidental" is understood in this sense, the phrase "incidental to [the insured's] business or job" could reasonably be understood to cover any use of an insured's airplane that plays a minor or subordinate role in comparison with the primary work for which the insured is receiving compensation.  This would

_____

[2]  The policy also provides an exception for payments to an insured person for the purpose of sharing operating costs that does not apply under the circumstances in this case.

6

seemingly include situations like the present case where an airplane is used to transport commercial skydivers to a jump site. In this sense, the use of an airplane is incidental to commercial skydiving, even though a skydiver needs an airplane to perform, because the use of the airplane is subordinate to the primary activity for which the skydiver is being compensated.

An analysis of the pertinent Federal Aviation Administration ("FAA") regulations and case law applying those regulations provides further support for this interpretation. The FAA regulations provide generally that

> a private pilot may not act as pilot in command of an aircraft that is carrying passengers or property for compensation or hire; nor may he, for compensation or hire, act as pilot in command of an aircraft.

14 C.F.R. § 61.118 (1993). Nevertheless, the regulations also permit a private pilot to receive compensation for using an airplane

> if the flight is only incidental to that business or employment and the aircraft does not carry passengers or property for compensation or hire.

14 C.F.R. § 61.118(a). Similarly, the FAA's definition of "commercial operator" states that

7

> [w]here it is doubtful that an operation is
> for "compensation or hire", the test applied
> is whether the carriage by air is merely
> incidental to the person's other business or
> is, in itself, a major enterprise for profit.

14 C.F.R. § 1.1 (1993). In a decision interpreting § 1.1, the Colorado Supreme Court determined that a private corporation operating a skydiving business did not act as a "commercial operator" in ferrying skydivers to jump sites because the "[c]arriage [of the skydivers] by air was incidental" to the company's skydiving business. Jones v. Dressel, 623 P.2d 370, 376 (Colo. 1981). Thus, if anything, the FAA regulations support the use of the commonly understood meaning of the term "incidental" to interpret the "commercial purpose" exclusion.

Under the circumstances presented in this case, a reasonable insured in Nathan Pond's position could plausibly have concluded that his insurance would provide coverage for liability arising from the use of his airplane to transport the Pond Family Skydivers to the jump site. This is all that is required under Connecticut law to obligate the insurer to provide coverage in this case.

## IV.  CONCLUSION

For the foregoing reasons, the clerk is instructed to enter judgment in favor of the defendants.

SO ORDERED.


_____
Paul Barbadoro
United States District Judge

April 11, 1996

cc:  Andrew Dunn, Esq.
     Jeffrey Cohen, Esq.
     Garry Lane, Esq.
     Michael Gfroerer, Esq.
     David Kaplan, Esq.