LORBROOK CORPORATION, Respondent, v G & T INDUSTRIES, INC., Appellant.

Third Department, October 18, 1990

APPEARANCES OF COUNSEL

*Donohue, Sabo, Varley & Armstrong (Bruce S. Huttner* of counsel), for appellant.

*Rapport, Meyers, Griffen & Whitbeck (Victor M. Meyers* and *Seth Rapport* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

Plaintiff is a domestic corporation whose principal plant is located in Columbia County where it manufactures vinyl goods. Defendant is a Michigan corporation which, in 1988, purchased goods from plaintiff for resale under its trade name to customers who installed them in their marine products. Plaintiff brought this action for some $288,000, allegedly representing the agreed purchase price for its goods sold and delivered to defendant. Defendant moved to dismiss the complaint on the basis of forum non conveniens. The principal support for defendant's motion was a printed provision set forth on the reverse side of defendant's purchase orders for the goods in question stipulating that "[t]his transaction shall be governed by and interpreted under the laws of, and any legal disputes resolved in, the State of Michigan". Plaintiff opposed the motion, contending that, under UCC 2-207, the foregoing "choice of forum" clause in the purchase order never became a part of the parties' agreement. That section of the UCC provides that a timely expression of acceptance or written confirmation "operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms" (UCC 2-207 [1]). The additional terms are deemed to be "proposals for addition to the contract" and, if the contract is "[b]etween merchants", the terms become part of the contract unless, *inter alia,* "they materially alter it" (UCC 2-207 [2] [b]).

Plaintiff's submission in opposition included three letters from plaintiff's management to defendant's management purporting to be in confirmation of an oral agreement between the parties reached during several meetings and telephone conversations which took place in 1987. In a letter dated July 23, 1987, it is recited that the agreed selling price of "marine seating vinyl" of a certain type would be $1.90 per 54-inch yard for colors and $2 for the same quantity in reds with a minimum run of 1,500 yards per color, terms "net 45 days F. O. B. Hudson, New York". And in a letter dated November 3, 1987, plaintiff's representative recites that "[s]ince the handshake has taken place between us, the following are my understandings which outline our agreements", among which was that "[defendant] will insure that the vinyl production allocated to [plaintiff] will average 25,000 to 30,000 yards weekly". Plaintiff averred that the foregoing writings were in confirmation of an oral agreement entered into between the parties before any purchase order for the covered products was sent by defendant. Therefore, according to plaintiff, the provision contained in the purchase orders fixing Michigan as the forum State for any legal dispute was, under UCC 2-207, an "additional term" which did not become part of the contract because it "materially alter[ed] it". Supreme Court agreed, and defendant appeals from the denial of its motion.

On appeal, defendant does not dispute that the transactions which are the subject matter of this action were "between merchants", as that phrase is defined under the UCC (see, UCC 2-104 [1], [3]). Nor is it contested that, if UCC 2-207 applies, the addition of a provision in an acceptance or confirmation designating a forum for legal disputes between the contracting parties would materially alter the agreement and, thus, not become part of the sales agreement without an additional expression of assent by the other party (see, Pacamor Bearings v Molon Motors & Coil, 102 AD2d 355, 358). Defendant's primary contention on appeal, however, is that no sales contract was ever formed here by virtue of any verbal discussions or exchanges of correspondence between the parties. Rather, each purchase order containing the forum selection clause sent to plaintiff constituted a separate offer to purchase by defendant, which was then accepted in all of its terms by plaintiff's delivery of the goods requested therein (citing UCC 2-206 [1] [b]). Thus, according to defendant, UCC 2-207 never came into play, and the forum selection provision of each purchase order was a binding term of the parties'

series of agreements. We disagree. From our review of the parties' evidentiary submissions, we conclude that, on any factual version of the parties' transaction supported by the evidence, the forum selection provision of defendant's purchase orders never validly became incorporated in their agreement.

First, it can be inferred from the evidence, as plaintiff contends, that plaintiff and defendant reached an oral agreement, confirmed by plaintiff's letters previously described, which adequately covered the essential terms of a valid requirements contract as to price, identity of the goods sold, minimum quantity, delivery, and time and method of payment (see, UCC 2-204; cf., Kleinschmidt Div. v Futuronics Corp., 41 NY2d 972, 973). Had such a prior oral agreement been reached, defendant's purchase orders would be nothing more than a request to ship a portion of the goods covered by that agreement, and the insertion of the forum selection clause would then be an unsuccessful ploy by defendant unilaterally to add a term not covered by the preexisting binding contract (see, LTV Aerospace Corp. v Bateman, 492 SW2d 703 [Tex]; see also, Matter of Marcus Bros. Textiles v Avondale Mills, 78 AD2d 800, appeal dismissed 54 NY2d 833; 2 Anderson, Uniform Commercial Code § 2-207:5, at 273 [3d ed]). Alternatively, under the same scenario, defendant's purchase orders could readily be considered as confirmations of the preexisting contract (see, Foley Co. v Phoenix Eng'g & Supply Co., 819 F2d 60, 61; M.K. Metals v Container Recovery Corp., 645 F2d 583, 591; 2 Anderson, Uniform Commercial Code § 2-207:26, at 285 [3d ed]). As such, however, the additional term fixing Michigan as the forum State for litigation never became part of the contract, because it materially altered the prior agreement and plaintiff never expressly assented to it (see, UCC 2-207 [2] [b]; Foley Co. v Phoenix Eng'g & Supply Co., supra, at 63-64; see also, Matter of Marlene Indus. Corp. [Carnac Textiles], 45 NY2d 327, 332-333).

█ Another possible version of the parties' transaction, also reasonably inferable from the evidence, is that plaintiff's letters collectively constituted an offer to enter into an agreement for the sale of its products to defendant, which was accepted by defendant's purchase orders. Again, however, the choice of forum clause in defendant's purchase order acceptances never became part of the sales agreement because it was an additional term materially altering the contract and was not expressly assented to by plaintiff (see, UCC 2-207 [2]

[b]; *Daitom, Inc. v Pennwalt Corp.*, 741 F2d 1569, 1575, 1577; *Mead Corp. v McNally-Pittsburg Mfg. Corp.*, 654 F2d 1197, 1203-1204; *Idaho Power Co. v Westinghouse Elec. Corp.*, 596 F2d 924, 925-927; *see also, Matter of Marlene Indus. Corp. [Carnac Textiles], supra).*

■ Finally to be considered is defendant's factual hypothesis that no bilateral contract was entered into by the parties as a result of their oral discussions or exchange of writings; instead, the operative events in the parties' transactions were defendant's offers communicated through the purchase orders, which were accepted according to all of their terms by plaintiff's deliveries of the ordered goods. The fatal flaw in this argument, however, is that it ignores the uncontested fact that there was an *exchange* of writings between the parties setting forth the essential terms of their proposed deal. Defendant's purchase orders were preceded by plaintiff's letters constituting, at the least, an offer to enter into a contract. Clearly, a valid bilateral agreement could then have been formed on its terms by a simple expression of defendant's assent to plaintiff's offer. It necessarily follows that defendant's purchase orders were either acceptances of plaintiff's offer or they were counteroffers. In either event, because of these exchanges between the parties, UCC 2-207 controls as to contract formation and content, rather than common-law "mirror image" rules of offer and acceptance, or other provisions of the UCC *(see, Matter of Marlene Indus. Corp. [Carnac Textiles], supra,* at 332-333; UCC 2-207, Comments 1, 2; 2 Anderson, Uniform Commercial Code §§ 2-207:3, 2-207:4, at 269-272 [3d ed]).

As we have already discussed, if the purchase orders are deemed to have constituted an acceptance of the offer contained in plaintiff's letters, the additional choice of forum term relied upon by defendant is unavailing because it never was validly incorporated into the parties' agreement.

■ The only remaining possibility under defendant's version of the facts is that its purchase orders were counteroffers. As counteroffers, concededly, the purchase orders were never expressly accepted by plaintiff, however. Therefore, the parties' writings (plaintiff's offer and defendant's counteroffers) did not establish a contract. Nonetheless, the parties' conduct over a period of months clearly manifested mutual recognition of the existence of a sales contract and, under UCC 2-207 (3), such conduct "is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish

a contract". But, UCC 2-207 (3) also modifies the common-law rule whereby the other party's performance following the counteroffer is considered an acceptance of the terms of the counteroffer. " 'A major consideration of [UCC 2-207] is the prevention of the imposition of harsh conditions upon one party merely as a result of his accepting a price quotation of a purchase order form' " (2 Anderson, Uniform Commercial Code § 2-207:4, at 272 [3d ed], quoting *Falcon Tankers v Litton Sys.*, 355 A2d 898 [Del]). Instead, the terms of the contract "consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act" (UCC 2-207 [3]). Thus, the UCC dispenses with the advantage defendant might otherwise have obtained at common law because its counteroffer was the last writing before performance. "At common law, the offeree/counterofferor gets all of its terms simply because it fired the last shot in the exchange of forms. Section 2-207 (3) does away with this result by giving neither party the terms it attempted to impose unilaterally on the other. * * * Instead, all of the terms on which the parties' forms do not agree drop out, and the U.C.C. supplies the missing terms" *(Diamond Fruit Growers v Krack Corp.*, 794 F2d 1440, 1444).

Therefore, even if we accept defendant's position that the parties never entered into a binding bilateral sales agreement through their writings and oral discussions, it cannot succeed in enforcing the choice of forum provision in its purchase orders. Since the writings exchanged between the parties do not agree regarding the designation of Michigan as the forum for any legal dispute between them, that provision in the purchase orders never became part of their agreement. Apart from that provision, defendant clearly has not established any basis for dismissal of plaintiff's suit on the ground of forum non conveniens. Accordingly, Supreme Court was correct in denying defendant's motion.

CASEY, J. P., WEISS, MERCURE and HARVEY, JJ., concur.

Order affirmed, with costs.