ROBERT P. MAGLIOZZI, JR. *vs.* P&T CONTAINER SERVICE
CO., INC., & others; CRUSADER PAPER CO., INC., third-
party defendant.

No. 92-P-385.

Middlesex. March 18, 1993. - June 14, 1993.

Present: DREBEN, SMITH, & GILLERMAN, JJ.

*Indemnity. Contract*, Indemnity, Offer and acceptance, What constitutes,
Modification.

In an action for indemnification brought by the lessor of a trash compactor
against the lessee, whose employee was injured by the compactor, sum-
mary judgment was correctly entered against the lessor, where the lease
agreement contained no indemnity provision and where the lessor's
trash collection invoice, which did contain indemnity language on its
reverse side, did not operate to modify the contract, either under the
Uniform Commercial Code or under common law principles. [593-595]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 4, 1987.

A motion for partial summary judgment on the third-party
claim was heard by *Robert ·H. Bohn, Jr.*, J., and entry of
separate and final judgment was ordered by him.

*Marc LaCasse* (*Marjorie O. Dresser* with him) for P&T
Container Service Co., Inc.

*Bryan C. Bolden* for Crusader Paper Co., Inc.

GILLERMAN, J. Seeking a shorter path to a coffee truck on
the premises of Crusader Paper Co., Inc. (Crusader), the
plaintiff Magliozzi, an employee of Crusader, walked
through the inside of a large trash compactor leased to
Crusader by P&T Container Co. Inc. (P&T), under a writ-
ten lease agreement. Magliozzi's foot caught in the com-
pactor, he was injured, and he brought suit against P&T,
which was the owner, manufacturer, and installer of the
compactor. P&T, in turn, brought a third-party action

against Crusader for indemnification of any costs for which P&T might be liable to the employee based upon an alleged contract of indemnification between Crusader and P&T.[1] Crusader's motion for summary judgment on the third-party complaint was allowed on the basis that there was no valid contract of indemnification between the parties, and a separate and final judgment under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), was entered in its favor.[2] P&T appeals, and we affirm.

The agreement between Crusader and P&T appears in a letter dated November 3, 1983. It is in the form of an offer to lease a two cubic yard compaction unit with a forty-two to forty-five yard closed container for the disposal of rubbish at Crusader's facility, as well as an offer to provide the service of emptying the container. The monthly rental for the compactor is $282, and the charge for the pickup and dumping of the container is $175 per load. The letter contains various specifications, but there are none of the provisions commonly found in a lease of equipment or in an agreement to perform service. Of particular importance is the fact that there is no indemnity agreement in the letter running in favor of P&T. Nonetheless, the parties do not now dispute the fact that the November 3 letter was a binding agreement between them.

It is also undisputed that in order to bill for the pickup and dumping services P&T prepared a pickup ticket. The pickup ticket comes into play in the following manner. Crusader would contact P&T in order to empty a compactor of its rubbish. P&T would then generate a standard form "pickup order ticket," in triplicate, with a pickup number and a description of the number of containers to be emptied and dumped. A driver of P&T would empty the compactor and obtain the signature of a Crusader employee on the face of

---

[1]"[A] third-party tortfeasor may recover indemnity from an employer only if the employer had expressly or impliedly contracted to indemnify the third party or if the employer and the third party stand in a relationship that carries with it the obligation to indemnify the third party." *Liberty Mut. Ins. Co. v. Westerlind*, 374 Mass. 524, 526 (1978).

[2]The employee's suit is not before us. The Superior Court docket indicates that the parties stipulated to a dismissal based on a settlement.

the pickup ticket. The driver would keep two copies and leave a copy with the Crusader employee; P&T would later staple a copy of the pickup ticket to Crusader's invoice for the services performed.

There is no language on the face of the ticket calling attention to, or referring in any way to, the reverse side of the ticket, nor is there any such reference on P&T's invoice to Crusader. On the reverse side of the pickup ticket, however, an indemnity provision is printed,[3] and that provision is the basis of the claim of P&T against Crusader.

P&T asks us to treat this case as a "battle of the forms" under art. 2 of the Uniform Commercial Code, arguing that the indemnification clause became an additional term of the contract because Crusader did not object to the term within a reasonable period of time. G. L. c. 106, § 2-207(2)(c). Crusader responds that art. 2 does not apply to leases.

We need not decide whether art. 2 applies to the lease at issue in this case[4] because the only relevant consideration is whether there was a valid amendment to the November 3 agreement. Under the analogous provision of art. 2, see *Dazien's, Inc.* v. *Hodgman Rubber Co.*, 7 Mass. App. Ct. 901 (1979) (UCC applied by analogy), and under the common law, the conclusion is the same: in the circumstances presented here, the pickup ticket did not modify the completed contract between the parties.[5]

---

[3]The relevant portion of the indemnity reads as follows: "The customer agrees to defend, indemnify and hold harmless P&T Container from and against any and all claims for loss or damage to property, or injury to or death of person or persons resulting from or arising in any manner out of customer's use, operation or possession of the equipment furnished under the agreement."

[4]While the Legislature has amended G. L. c. 106, § 2-318, by St. 1973, c. 750, so that under §§ 2-314 and 2-318 a warranty of merchantability is implied in the lease of goods, the Legislature has not amended the scope of c. 106, § 2-102, to include leases within all of art. 2's provisions. See *Back* v. *Wickes Corp.*, 375 Mass. 633 (1978); *Mason* v. *General Motors Corp.*, 397 Mass. 183 (1986).

[5]The judge below treated the indemnity clause as though it were a disclaimer of warranties, holding that the indemnification clause was not a part of the contract because it was not conspicuous. See *Hunt* v. *Perkins Mach. Co.*, 352 Mass. 535 (1967); G. L. c. 106, § 2-316. We may, how-

The principles expressed in G. L. c. 106, § 2-207, provide no assistance to P&T because those provisions bear on the *formation* of a contract. See 2 Anderson, Uniform Commercial Code § 2-207:5, at 273 (3d ed. 1982). Thus, for example, where a "definite and seasonable" acceptance contains additional terms, those additional terms, as between merchants, may become part of the contract under § 2-207(2) unless precluded by subdivisions (*a*), (*b*) or (*c*) of that section. Here, it is undisputed that P&T's letter of November 3 was a completed contract between the parties, and we may assume that the compactor was installed, in place, and in use for Crusader's refuse before the first pickup ticket was cut by P&T. Once agreement has been reached and performance has commenced, § 2-207 does not operate to make additional terms that are proposed unilaterally in a later writing part of the complete agreement. *Lorbrook Corp.* v. *G&T Indus., Inc.*, 162 A.D.2d 69, 73 (N.Y. 1990). See also 2 Anderson, Uniform Commercial Code § 2-207:5, at 272-273 ("When a written contract is formed based on a purchase order, a later writing does not call UCC § 2-207 into operation") and § 2-209:17, at 323-324 ("When a sales contract has been made, the seller cannot unilaterally modify the contract by adding in the invoice a term, such as a term requiring that payment be made at a particular and different place").

The result is no different under common law principles. Generally, it is a question of fact whether a party intended to relinquish contractual rights by entering into a subsequent agreement. *Roddy & McNulty Ins. Agency, Inc.* v. *A.A. Proctor & Co.*, 16 Mass. App. Ct. 525, 536 (1983). An inference of assent is not warranted, however, where the subsequent writing (1) is used for other purposes — here, the acknowledgment of a refuse pickup; (2) does not purport to be a contract and is not contractual in form; and (3) gives no notice whatsoever of proposed additional terms which are not visible on the face of the writing. In these situations, the

---

ever, affirm on a ground not relied on by the judge. See *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992).

"party without knowledge or reason to know that the . . . [pickup ticket] ·purports to be a contract is then not bound by terms printed on the [ticket]." Restatement (Second) of Contracts § 211 comment d & illustration 3 (1979). See also *Kergald* v. *Armstrong Transfer Exp. Co.*, 330 Mass. 254, 255-256 (1953), and cases cited. Contrast *Polonsky* v. *Union Fed. Sav. & Loan Assn.*, 334 Mass. 697, 701 (1956) (conditions in bank book are part of contract whether or not brought to the attention of depositor because it is common knowledge that bank books "frequently contain provisions defining the rights between the bank and its depositors").

In sum, there is nothing, save the words of indemnification printed on the back of the refuse pickup tickets, to give notice that P&T was extending an offer to modify the existing contract for Crusader's assent. As matter of law, Crusader was not bound by the indemnity clause. Were we to hold otherwise we would sanction an "unsuccessful ploy by . . . [P&T] unilaterally to add a term not covered by the preexisting binding contract." *Lorbrook Corp.* v. *G&T Indus., Inc.*, 162 A.D.2d at 73. There is no genuine issue as to any material fact, and Crusader is entitled to judgment as matter of law. *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 808-809 (1991).

*Judgment affirmed.*

MONICA McKINLEY NUTTER *vs.* CARLTON WOODARD.

No. 92-P-126.

Essex. May 6, 1993. - June 16, 1993.

Present: ARMSTRONG, FINE, & GILLERMAN, JJ.

*Practice, Civil,* Death of party, Amendment. *Executor and Administrator,* Proceedings commenced after death of decedent.

In a negligence case in which the plaintiff, her attorney, the defendant's attorney and the insurer were unaware that the defendant had died before the complaint was filed and answered, the nullity doctrine, as set forth in *Chandler* v. *Dunlop,* 311 Mass. 1, 5 (1942), was inapplicable, where the legal representative of the estate was in existence and amenable to suit under the provisions of G. L. c. 197, § 9A, at the time the complaint was filed; where the legal representative had actual notice of the action; and where, in the circumstances, no showing was made of any prejudice resulting from not applying the doctrine. [598-600]

CIVIL ACTION commenced in the Haverhill Division of the District Court Department on August 3, 1989.

A motion to dismiss was heard by *Norman Brisson,* J.

*John S. Wessler* for the plaintiff.

*Alan D. Hoch* for the defendant.

FINE, J. According to the nullity doctrine, as set forth in *Chandler* v. *Dunlop,* 311 Mass. 1, 5 (1942), a complaint brought against a deceased person is one "brought against nobody," and, because such an action is void from the beginning, any subsequent amendment of the complaint does not relate back, for purposes of the statute of limitations, to the date of the initial filing. The issue before us is whether the instant case is governed by the nullity doctrine or, instead, by the reasoning in *Holmquist* v. *Starr,* 402 Mass. 92 (1988), which narrowed that doctrine.

On September 4, 1986, Monica M. Nutter suffered injuries in an automobile accident involving a vehicle operated by

Carlton Woodard, who was issued a traffic citation at the scene for going through a red light. A timely claim was filed by Nutter with Woodard's insurer, Safety Insurance Company, and negotiations commenced between the insurer and Nutter's attorney. Nutter filed the instant personal injury action in the Haverhill District Court on August 3, 1989, alleging damages, within the policy coverage, of $25,000, and naming only Woodard as a defendant. Service was made by a deputy sheriff by leaving a copy of the complaint at Woodard's last and usual place of abode in Lawrence, and by mail to the same address. An attorney retained by Safety Insurance Company filed an answer on Woodard's behalf on October 24, 1989. Unbeknownst to Nutter, her attorney, Woodard's attorney, and the insurer, Woodard had died, at the age of twenty-one, on August 2, 1987. His mother, of the same address, had filed a petition for voluntary administration of her son's estate on September 4, 1987, and distribution had been accomplished by September 15, 1987.

On November 20, 1989, after receiving a letter from Woodard's mother informing him of Woodard's death, Woodard's attorney filed a motion to dismiss this action or for summary judgment. On December 15, 1989, Nutter moved to amend the complaint to name Woodard's mother, in her capacity as administratrix, as defendant. Before that motion was acted upon, the District Court judge denied Woodard's attorney's motion to dismiss or for summary judgment, and an appeal was taken to the Appellate Division of the District Court. Reversing, and ordering Nutter's action dismissed, the Appellate Division relied on the nullity doctrine. It recognized that the doctrine had been held inapplicable in *Holmquist* v. *Starr*, 402 Mass. 92 (1988), but ruled that there were sufficient differences in the facts of *Holmquist* to make it inapplicable to the case at bar. The Appellate Division, however, questioned the "continued wisdom [of the nullity doctrine] . . . where there has been no prejudice to the real party in interest (an insurance carrier) and where the plaintiff's demand was never in excess of the insurance policy limits."

In *Holmquist*, a personal injury action was brought against a deceased person, and the issue was whether an amendment to substitute the executrix of the estate as a defendant related back to the date of the original filing. The court held that its previous decisions did not support application of the nullity doctrine because of the presence of the following circumstances: "(1) the representative of the deceased at the time the action was commenced had legal existence; (2) notice was given to the representative of the estate; [and] (3) an answer was filed on behalf of the estate." *Holmquist* v. *Starr*, 402 Mass. at 95.

The first two of the circumstances noted are substantially present in this case. At the time the present action was brought, there was a person in existence, Woodard's mother, against whom the action could have been brought. Although the estate had been closed by the time the action was commenced, a complaint could have been brought against the administratrix on Nutter's personal injury claim as a mere formality for bringing in the insurer, the only real party in interest. General Laws c. 197, § 9A, as amended through St. 1974, c. 234, permits suits for personal injuries to be commenced against an administratrix "provided that such action is commenced within three years next after the cause of action accrues, and provided further that any judgment recovered . . . may be satisfied only from the proceeds of a policy of insurance."[1] Nutter's claim was both timely under that

---

[1]Arguably, G. L. c. 197, § 9A, does not apply to estates voluntarily administered under G. L. c. 195, § 16. Considering both logic and the obvious legislative goal of protecting plaintiffs with legitimate claims, however, there is no reason why § 9A should not apply to such estates. In all such cases, the insurer is the only party with a real interest in defending the claim, and it should make no difference whether the particular estate is a large one or a small one.

An alternative basis for concluding that there was in existence a legal representative of the estate who could have been sued may be found in G. L. c. 195, § 16, as amended by St. 1955, c. 413, § 1, which provides that, for purposes of G. L. c. 175, § 113A, par. 6, "a voluntary administrator shall be deemed to be the legal representative of the estate of the deceased until an executor or administrator is appointed." Section 113A, par. 6, as amended through St. 1949, c. 693, provides that, "if such legal representative is appointed, the policy shall . . . cover such legal represen-

tative to the same extent as though he were named as the insured in the policy."