Hazen v. Resort Condo Intern'l        CV-95-251      01/31/96

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


George Hazen
Elizabeth Hazen

        v.                              Civil No. 95-251-JD

Resort Condominium
International, Inc., et al.


                            O R D E R


     The plaintiffs, George and Elizabeth Hazen, have brought

this action against a variety of defendants to recover for

injuries sustained by George Hazen during a 1994 vacation to

Cancun, Mexico.  Before the court are the motion to dimiss of the

defendant Trans National Travel/The Haley Corporation ("TNT")

(document no. 5); the defendant Liberty Travel, Inc.'s

("Liberty") motion for summary judgment (document no. 26);

plaintiffs' motion for enlargement of time under Rule 56(f)

(document no. 28); the plaintiffs' motion to compel TNT to

respond to outstanding discovery requests (document no. 27); and

TNT's motion to stay substantive discovery against it pending

resolution of its motion to dismiss (document no. 32).

I.    TNT'S MOTION TO DISMISS

Background

A.    The Vacation

The Hazens reside in Manchester, New Hampshire.  In February 1994, George Hazen visited Liberty's Burlington, Massachusetts, office to inquire about vacation packages to Mexico.  During this visit Staci Limoli, a Liberty travel agent, recommended a TNT package trip that included accommodations at the defendant Royal Solaris Caribe Hotel and Marina ("Royal Solaris"), a resort located in Cancun, Mexico.  Although Limoli described the vacation to George Hazen, she could not provide him with any written literature "[b]ecause Liberty had run out of TNT brochures on the Caribbean."  Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 3.

On February 21, 1994, Mr. Hazen returned to Liberty's office, this time accompanied by his wife, Elizabeth.  The plaintiffs discussed the TNT vacation with Limoli.  Elizabeth Hazen has testified that

> [Limoli] told us about the facilities and features of the Royal Solaris.  She described it as an all inclusive five or six star hotel with excellent facilities.  Ms. Limoli still did not have any TNT brochures available describing the vacation packages to Cancun or the Royal Solaris.
>
> Nonetheless, Cancun and the Royal Solaris sounded great so that same day we booked the TNT vacation package and accommodations at the Royal Solaris.  We

2

> paid three hundred dollars ($300.00) towards the total cost of the trip. When we paid the money, no one from TNT or Liberty mentioned the Tour Participant Contract or anything about a forum selection provision. We did not see any TNT documents until after we booked the trip. We never signed any TNT documents.

Affidavit of Elizabeth Hazen at ¶¶ 4-5; see Affidavit of George Hazen at ¶ 4 ("[A]t the travel agent's instruction, I paid three hundred dollars ($300.00) towards the trip. I never received any documents from TNT when I booked the trip. At the time we booked the trip, no one mentioned the Tour Participation Contract or that disputes with TNT had to be resolved in Massachusetts.").

At some point after they booked their TNT trip with Liberty, the plaintiffs received from another travel agent a TNT Brochure entitled "Caribbean Sunshine Guide:  including Mexico, Bahamas, and Bermuda" ("TNT Brochure"). The brochure "affirmed, reinforced and expanded" on Limoli's description of the Royal Solaris. Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 4. "The Plaintiffs never focussed on or read the fine print of the Contract because they had already paid their deposit towards the trip and as far as they were concerned, they did not need to do anything further to secure places on the trip." Id. (citing George Hazen Affidavit at ¶ 6, Elizabeth Hazen Affidavit at ¶ 6).

On March 15, 1994, George Hazen returned to Liberty to inquire about cancelling their vacation. He was told by an

3

unnamed travel agent that cancellation would result in the forfeiture of the deposit. "Because he did not want to lose this money, Mr. Hazen paid the remaining amounts owed on the vacation package." Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 5.

On April 23, 1994, the plaintiffs flew to Cancun, Mexico, and checked into the Royal Solaris. On April 25, 1994, George Hazen sustained personal injury when he slipped on the edge of an outdoor jacuzzi located at the resort. The plaintiffs filed this action in April 1995, in New Hampshire state court. On May 11, 1995, TNT removed this action to federal court alleging the complete diversity of the parties, 28 U.S.C. § 1332(a)(1), (c)(1).

B. The Small Print

The TNT Brochure contained a page entitled, in larger-than-standard print, "1993 TNT/HALEY TOUR PARTICIPATION CONTRACT."[1] Beneath this title in smaller-than-standard print, a variety of terms appear, arranged in two columns. The small print begins:

_____

[1]The court notes that the "1993 Tour Participation Contract" is printed in the TNT's 1994 Caribbean Sunshine Guide, which the plaintiffs have appended as an exhibit to their opposition to the instant motion. Despite the apparent mislabeling of the year, TNT does dispute that the contract labeled 1993 is the one relevant to the instant dispute because TNT's 1995 brochure was not printed until after the plaintiffs had purchased their vacation and completed travel to Mexico. See TNT's Memorandum in Support of Motion to Dismiss at n. 2, exhibit A.

4

> This agreement contains the terms and conditions by which Trans National Travel/The Haley Corporation, in consideration for Participant's payment, agrees to provide these travel arrangements. **READ THIS AGREEMENT CAREFULLY BEFORE SENDING ANY MONEY!!  RESPONSIBILITY AND LIABILITY: Trans National Travel/The Haley Corporation ("Operator"), The Trans National Building, 2 Charlesgate West, Boston, MA 02215-3552,** is responsible to its passengers as outlined below. Operator, as the principal on charter flights, is responsible for arranging and providing all services and accommodations offered in connection with these trips.

TNT Brochure at 26, left col.  The following appears in the middle of the left column:

> **RESERVATIONS AND PAYMENT:** A deposit of $150 per Participant and a signed Tour Participant Contract is required to secure reservations.

TNT Brochure at 26, left col.  The following provision appears two-thirds down the right column:

> **INSURANCE:** TRIP CANCELLATION, HEALTH, ACCIDENT AND BAGGAGE INSURANCE IS AVAILABLE AND STRONGLY RECOMMENDED FORUM [sic] FOR DISPUTES: Participant(s) and Operator agree to resolve any dispute only in a court of competent jurisdiction in Massachusetts, under Massachusetts Law.

Id. at 26, right col.

Discussion

A.   Procedural Posture

As an initial matter, the court must address the procedural posture of the defendant's motion.  TNT seeks dismissal under Rule 12(b)(6), which is a proper vehicle for dismissals based on a forum selection clause.  E.g., Lambert v. Kysar, 983 F.2d 110,

5

112, n. 1 (1st Cir. 1993) (citing <u>LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.</u>, 739 F.2d 4, 7 (1st Cir. 1984)). In some instances the court may, on its own initiative, treat a motion to dismiss as one for summary judgment, particularly where matters outside the pleadings are submitted and not excluded by the court. <u>Burgess v. University of New Hampshire</u>, No. 94-338-JD, slip op. at 12-13 (D.N.H. March 28, 1995), <u>aff'd</u>, No. 95-1539, 1995 WL 686110 (1st Cir. 1995) (per curiam); 1B James W. Moore, et al., Moore's Federal Practice ¶ 0.408[1] (2d ed. 1994). The court's authority to covert a motion to dismiss into a motion for summary judgment comes directly from Rule 12. <u>Burgess</u>, slip op. at 12-13 (citing <u>Levesque v. Miles, Inc.</u>, 816 F. Supp. 61, 62-63 (D.N.H. 1993); Fed. R. Civ. P. 12(b)).

"A motion to dismiss is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed with . . . the district court." <u>Garita Hotel, Ltd. v. Ponce Federal Bank</u>, 958 F.2d 15, 18-19 (1st Cir. 1992). The test for converting a motion to dismiss to a summary judgment is "not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision." <u>Id.</u> at 19. When the court converts a Rule 12(b)(6) motion into a motion for summary judgment, it must give all parties "reasonable opportunity to

present all material made pertinent to such a motion by Rule 56."

Fed. R. Civ. P. 12(b). However,

> [the First] Circuit does not mechanically enforce the
> requirement of express notice of a district court's
> intention to convert a Rule 12(b)(6) motion into a
> motion for summary judgment. Instead, we treat "any
> error in failing to give express notice as harmless
> when the opponent has received the affidavit and
> materials, has had an opportunity to respond to them,
> and has not controverted their accuracy."

Chaparro-Febus v. International Longshoremen Ass'n, 983 F.2d 325,
332 (1st Cir. 1992) (quoting Moody v. Town of Weymouth, 805 F.2d
30, 31 (1st Cir. 1986)).

Both parties have submitted extensive materials outside the
pleadings in support of their respective positions on the
applicability of the forum selection clause. These include
affidavits, admissions obtained through discovery, exhibits, and
other materials properly considered under Rule 56(c). The
submission of these materials manifests the parties'
understanding that they are permitted to address the forum
selection clause issue with legal argument and supporting
materials beyond the pleadings. Thus, there is no need
to give express notice of the court's intention to convert to a
motion for summary judgment. See Chaparro-Febus, 983 F.2d at 332
(trial court properly converted motion to dismiss to motion for
summary judgment where plaintiff responded to motion as if it
were filed under Rule 56); Burgess, slip op. at 14 (same). The

7

court converts the defendants' motion to dismiss into a motion for summary judgment under Rule 56.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden is on the moving party to establish the lack of a genuine, material factual issue, and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (citations omitted). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)), or suffer the "swing of the summary judgment scythe," Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989). "In this context, `genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party, Anderson, 477 U.S. at 248; `material' means that the fact is one `that might affect the outcome of the suit under the governing law.'" United

8

States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 248).

In its motion, TNT asserts that "the forum-selection clause in the contract between the parties requires that actions against TNT be brought only in Massachusetts, and that therefore this New Hampshire action should be dismissed for failure to state a claim upon which relief would be granted."  TNT's Memorandum in Support of Motion to Dismiss at 1.  The plaintiffs respond that the forum selection clause was never part of an agreement with TNT and, as such, does not govern this action.  See Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 1.  The plaintiffs further argue that TNT's conduct, including the failure to communicate the terms of the contract, constitutes a waiver of the forum selection clause.  See id.

B.    Forum Selection Clauses are Presumptively Valid

"Under federal common law, it is well-settled that parties to a contract may agree in advance to submit to the jurisdiction of a given court."  R.W. Granger & Sons, Inc. v. Rojac Company, Inc., 885 F. Supp. 319, 321 (D. Mass. 1995) (citing National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1964); The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1964)).  Federal courts enforce forum selection clauses "unless the objecting

9

party can 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. (quoting The Bremen, 407 U.S. at 15); see Boulanger v. Fleet Bank, No. 94-036-L, slip op. at 4 (D.N.H. June 19, 1994). The state law of both New Hampshire and Massachusetts also treats forum selection clauses as presumptively valid and enforceable absent a showing that enforcement would be unreasonable. See, e.g., Goulet v. Water Resources Int'l, No. 92-37-L, slip op. at 6-7 (D.N.H. April 8, 1992) (citing Uniform Model Choice of Forum Act, N.H. Rev. Stat. Ann. ("RSA") § 508-A:3 (1983)); Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 574-75, 646 N.E.2d 741, 743 (1995) (citing federal case law and Restatement (Second) of Conflict of Laws § 80 (1988)). Because New Hampshire and Massachusetts state law and the federal common law are essentially uniform with respect to the enforceability of forum selection clauses, the court "need confront neither the choice-of-law issue nor the daunting question whether forum selection clauses are to be treated as substantive or procedural for Erie purposes." See R.W. Granger, 885 F. Supp. at 321 (quoting Lambert v. Kysar, 983 F.2d 1110 (1st Cir. 1993)). The court finds that the forum selection clause is presumptively valid provided the clause is found to have been part of a binding contract between the parties.

10

## C.   The Pivotal Question

TNT, relying on numerous federal cases involving cruise ship liability, argues that the forum selection clause was a part of its contract with the plaintiffs and, as such, is valid and enforceable.  See generally TNT's Memorandum and Reply Memorandum in Support of Motion to Dismiss.  The plaintiffs argue that, under the facts of this case, there was no valid forum selection provision included in whatever contract or agreement they may have entered into with TNT.  Thus, the pivotal question is whether the forum selection clause at issue was ever part of a binding contract between the parties.  See Lambert, 983 F.2d at 1114-16 (when determining whether to enforce forum selection clause, First Circuit first addresses whether clause was part of the contract).  If the clause was a contractual term, it is presumptively valid and the burden would shift to the plaintiffs to establish that enforcement would unreasonable.  If it was not a term, the presumption of enforceability is plainly irrelevant as there would be no provision to enforce.

The court must resolve an apparent dispute over which body of substantive law governs this central question.  TNT has cited an abundance of federal authority for the proposition that, absent unusual circumstances, tour participants are generally held to forum selection clauses and other provisions, even where

11

the provisions are pre-printed on the back of travel documents, are unilateral and nonnegotiable, and are not communicated to the passenger until after partial payment has been tendered, so long as the passenger had the opportunity to read the provisions prior to embarkation. See Defendant's Memorandum and Reply Memorandum in Support of Motion to Dismiss (citing, inter alia, Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991); Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905 (3d Cir. 1988), cert. dismissed, 490 U.S. 1001 (1989); Rawlins v. Clipper Cruise Lines, No. 94-4150-CW, slip op. (N.D. Cal. April 25, 1995), mandamus denied, No. 94-4150, slip op. (9th Cir. June 29, 1995); Sasso v. Travel Dynamics, Inc., 844 F. Supp. 68 (D. Mass. 1994)).[2] This exhaustive compilation of federal caselaw does not control the contract formation question given that the question does not present admiralty or other matters governed by federal law. Compare Shute, 499 U.S. at 587 (first line of opinion noting that case arises under admiralty law).[3] Rather, this case

_____

[2]The court's resolution of this motion has been constrained by inadequate briefing of key legal issues. For example, TNT has completely failed to address the threshold choice of law issues and instead has proceeded under the erroneous assumption that federal law controls the court's determination of whether a binding choice of law provision ever existed between the parties.

[3]Indeed, TNT removed this case from state court based on diversity of citizenship and not on the existence of a federal question or under some other statutory grant of federal

12

is more analogous to Lambert v. Kysar, where the First Circuit, sitting in diversity, ruled that forum selection clauses are presumptively valid where the clause was found to be binding on the parties under state law. 983 F.2d at 1114-118; see Boulanger v. Fleet Bank, No. 94-36-L, slip op. at 4-5 (D.N.H. June 6, 1994) (forum selection clause enforced after court applied state law to determine that clause was part of enforceable contract). The court finds that issues of contract formation and interpretation, including a determination of which terms were agreed upon, are to be determined in accordance with state law.

The court next must determine which state's substantive law should govern the contract formation and interpretation question. The TNT brochure purports to require that disputes with tour participants are to be resolved under Massachusetts law. Of course, the court cannot enforce the brochure's choice of law provision given the dispute over whether the terms of the brochure constitute a binding contract. See Coopers & Lybrand v. Bailey Manufacturing Corp., No. 94-393-JD, slip op. at 8-9 (D.N.H. June 13, 1995) (no weight placed on purchase order's choice of law provision where parties disputed whether purchase order constituted valid contract). Instead, the court applies "the law of the jurisdiction with the most significant

_____

jurisdiction.

13

relationship to the contract." Ferrofluidics Corp. v. Advanced Vacuum Components, 968 F.2d 1463, 1467 (1st Cir. 1992) (citing Consolidated Mut. Ins. Co. v. Radio Foods Corp., 108 N.H. 494, 496, 240 A.2d 47, 49 (1964)); Coopers & Lybrand, No. 94-393-JD, slip op. at 5-6 (citing Glowski v. Allstate Ins. Co., 134 N.H. 196, 197-98, 589 A.2d 593, 595 (1991); Restatement (Second) of Conflict of Laws § 188(1)).[4]

Applying these principles, the court finds that Massachusetts bears the most significant relationship to the purported contract because the TNT vacation was discussed, negotiated, and purchased in Burlington, Massachusetts, and because the vacation embarked from and returned to Boston, Massachusetts. The fact that the plaintiffs reside in New Hampshire is of little significance to the contract formation and

---

[4]The Restatement outlines five specific factors to be considered when determining which law governs the rights and duties of a party to a contract:

    (a) the place of contracting;
    (b) the place of negotiation of the contract;
    (c) the place of performance;
    (d) the location of the subject matter of the contract; and
    (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Second Restatement § 188(2). In addition, when construing service contracts the Restatement suggests application of "the local law of the state where the contract requires that the services, or a major portion of the services, be rendered." Id. § 196.

14

interpretation issue given that the plaintiffs voluntarily travelled beyond their home state to purchase the vacation from a Massachusetts travel agent. Accordingly, the court applies the substantive law of Massachusetts to determine whether the forum selection clause at issue was ever part of a binding contract between the parties.

In Massachusetts, "the interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon such interpretation." USM Corp. v. Arthur D. Little Sys, Inc., 28 Mass. App. 108, 116, 546 N.E.2d 888, 893 (1989)(citing Robert Indus., Inc. v. Spence, 362 Mass. 751, 755, 291 N.E.2d 407 (1973); Fred S. James & Co. v. Hoffman, 24 Mass. App. 160, 165, 507 N.E.2d 269, rev. denied, 400 Mass. 1103, 504 N.E.2d 1202 (1987); Restatement (Second) of Contracts § 212(2) & cmt. d (1981)), rev. denied, 406 Mass. 1104, 550 N.E.2d 396 (1990); see Starr v. Fordham, 420 Mass. 178, 190, 648 N.E.2d 1261, 1269 (1995) ("Contract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention.")(citing Shea v. Bay State Gas Co., 383 Mass. 218, 222-23, 418 N.E.2d 597 (1981)). Disputes involving the existence, terms, and performance or breach of an oral contract are considered questions of fact.

15

<u>Massey's Plate Glass Co., Inc. v. Quinlan</u>, No. 9149, 1992 WL 141885 at * 2 (Mass. App. Div. June 17, 1992) (citing <u>First Penn Mortg. Tr. v. Dorchester Sav. Bank</u>, 395 Mass. 614, 624-26, 481 N.E.2d 1132, 1138-39 (1985)).  In the absence of a written or oral agreement, Massachusetts courts will enforce implied-in-fact contracts where the "conduct or relations of the parties imply the existence of a contract."  <u>Popponesset Beach Assoc. v. Marchillo</u>, ___ Mass. App. ___, ___, ___ N.E.2d ___, ___, 1996 WL 4914 at * 3 (Jan. 3, 1996) (citing <u>LiDonni v. Hart</u>, 355 Mass. 580, 583, 246 N.E.2d 446, 449 (1969); Restatement (Second) of Contracts § 4 cmt. a, & illus. nos. 1 & 2 (1981)).

In general, Massachusetts courts enforce the boilerplate terms contained in standardized contracts because "[c]ustomers who adhere to standardized contractual terms ordinarily understand that they are assenting to the terms not read or understood, subject to such limitations as the law may impose." <u>Chase Commercial Corp. v. Owen</u>, 32 Mass. App. 248, 253, 588 N.E.2d 705, 708-09 (1992).  Such contracts are not enforceable where they are "unconscionable, offend public policy, or are shown to be unfair in the particular circumstances."  <u>Id.</u> (small print contractual jury waiver found fair and enforceable where, <u>inter alia</u>, standardized contract was reviewed by defendant's attorney).  Moreover, when confronted with subsequent writings

16

that purport to alter prior agreements, Massachusetts courts will not infer that a party assented to a boilerplate provision where, inter alia, the writing

> gives no notice whatsoever of proposed additional terms which are not visible on the face of the writing. In these situations, the party without knowledge or reason to know that the [document] purports to be a contract is then not bound by the terms printed on the [document].

Magliozzi v. P & T Container Service Co., 34 Mass. App. 591, 594-95, 614 N.E.2d 690, 692 (1993) (quotation marks omitted) (citing Restatement (Second) of Contracts § 211); see Restatement (Second) of Contracts § 211, cmt. d, illus. 6 (standardized contractual provisions not binding on party where party lacked knowledge or reason to know of terms and where terms not referred to in the documents or materials that are known to party). Compare Polansky v. Union Fed. Sav. & Loan Assoc., 334 Mass. 697, 701, 138 N.E.2d. 115, 117 (1956) (terms and conditions pre-printed in bank book, but not brought to depositor's attention, are binding on depositor where it was within common knowledge that bank books "frequently contain provisions defining the rights between the bank and its depositors.").

It is clear that the parties consummated some form of agreement, perhaps an oral or an implied-in-fact contract, because the plaintiffs paid for and, in exchange, TNT provided a Mexican vacation. However, for the following reasons the court

17

finds that, whatever this agreement may have called for, it did not as a matter of law include the forum selection clause printed in the brochure.

First, there is no genuine dispute of fact that TNT failed to communicate to the plaintiffs the substance or even the existence of the forum selection clause. TNT has not adduced evidence to challenge the veracity of key portions of the plaintiffs' affidavits. Specifically, TNT has not disputed (1) that Liberty Travel failed to provide, even upon request, a copy of the brochure which contained the terms of the purported contract; (2) that neither Liberty Travel nor TNT ever alerted the plaintiffs to the existence of the purported contract or any forum selection provision; and (3) that the plaintiffs booked and paid for their vacation without signing any contract or other documentation. The plaintiffs' complete lack of notice of the existence of the forum selection clause bars its enforceability because a party cannot as a matter of law assent to a contractual term which is unknown and unknowable at the time of contracting. See Restatement (Second) § 5(1) ("A term of a promise or agreement is that portion of the intention or assent manifested which relates to a particular matter.").

Second, the uncontroverted affidavit testimony describing the events surrounding the booking and purchase of the vacation

18

stands in stark contrast to the role the tour participant contract is intended to serve in TNT's reservation and booking procedures. Susan Amato, TNT's assistant vice president for quality assurance/customer service, testified that the tour participant contract "is included in the brochure which would have been obtained by the Hazens at their retail travel agent's location." TNT's Answers to Plaintiffs' First Set of Interrogatories ("First Interrogatory Answers") at no. 5. TNT's discovery responses also include the following:

6. When (month, day, and year) did TNT receive a signed Tour Participant Contract from the Plaintiffs?

ANSWER: The Tour Participant Contract would have been signed at the time of [sic] sending in of the initial deposit, but both the deposit and the Tour Participant Contract would have been sent to the travel agent and not TNT.

\* \* \* \*

10. Please state all facts relied upon by TNT for the assertion that the Plaintiffs received notice of the Tour Participant Contract and the forum selection clause contained therein.

ANSWER: The Tour Participant Contract was a part of the brochure. Without access to the brochure the plaintiffs could not have booked the trip.

TNT's First Interrogatory Answers at nos. 6, 10. Moreover, the contract itself states that a "deposit of $150 per Participant and a signed Tour Participant Contract is required to secure reservations." (emphasis supplied). Conspicuously absent from

19

the record is a copy of the signed contract that the contract itself states, and TNT acknowledges in its discovery responses, is a prerequisite to booking and placing a deposit on a vacation. The absence of a signed contract is entirely consistent with the plaintiffs' uncontroverted testimony that they never read, signed, or otherwise assented to such written terms. Thus, there is no genuine dispute of fact that on February 21, 1994, the plaintiffs booked and agreed to purchase the vacation and that, at some later point, TNT disregarded its own contract and stated policies by accepting the reservation and deposit without receiving a signed contract and without reasonably communicating the existence of the forum selection clause or other key terms printed in the brochure.

TNT asserts that any failure to communicate contractual provisions is irrelevant and does not bar enforcement of the forum selection clause because the plaintiffs concede that they received the brochure from another source after February 21, 1994, but prior to embarkation. See TNT's Reply Memorandum in Support of Motion to Dismiss at 1.[5] The argument, which may

---

[5] TNT's heavy reliance on federal admiralty cases is erroneous given the court's ruling, supra, that state contract law, and not federal law, governs disputes involving the existence, terms, and interpretation of the contract. Moreover, even if the cruise ship decisions were controlling, the majority of those cases involved small print provisions which were communicated directly from the operator to the passenger or the

20

be valid under federal admiralty law, fails as a matter of Massachusetts contract law. The court finds that the plaintiffs' fortuitous receipt of a brochure from another source does not cure TNT's undisputed failure to communicate the existence of key terms at the time of contracting, February 21, 1994. Having already agreed to purchase the trip, there was little or no impetus for the plaintiffs to read, let alone assent to, the small print included on a brochure distributed by another travel agency, particularly absent any reason for the plaintiffs to believe that the brochure somehow modified their rights or controlled an already consummated agreement.

Third, TNT is prevented from relying on the forum selection clause by principles of estoppel, fairness, and barnyard equity. The plaintiffs were never provided with the brochure, even though they asked, and, therefore, were never alerted to the existence or the substance of terms plainly designed to limit their rights. Meanwhile, TNT processed the plaintiffs' reservation in violation of its own contract and stated policies. Significantly, TNT itself ignored the terms of the contract by accepting the plaintiffs' deposit, final payment and, later, by providing the

_____

passenger's representative on the back of necessary travel documents, such as a ticket or boarding pass. See, e.g., Shute, 499 U.S. 585. Unlike the cruise lines, TNT never communicated, directly or indirectly, the forum selection clause to the plaintiffs.

21

purchased vacation without obtaining a signed tour participant contract. Based on the undisputed conduct of the parties, the court finds that it would be unfair and unconscionable to bind the plaintiffs to the forum selection provision. In the alternative, the court finds that even if the brochure did form the basis of an agreement between the parties, TNT's failure to adhere to the term requiring a signed tour participation contract constitutes a waiver of other provisions contained in the brochure, including that designating Massachusetts as the forum for disputes.

In summary, the court finds as a matter of Massachusetts law that whatever agreement may have existed between the parties it did not embrace the forum selection clause contained in the TNT brochure.


II. LIBERTY'S MOTION FOR SUMMARY JUDGMENT & PLAINTIFFS' RULE 56(f) MOTION FOR ENLARGEMENT OF TIME

Liberty requests summary judgment on the ground that it cannot be held liable for the acts and omissions of tour operators, such as TNT, and independently owned and operated hotels, such as the Royal Solaris. Liberty further asserts that it was unaware of the alleged dangerous conditions at the Royal Solaris and that travel agents are under no duty to warn its customers of unknown risks.

22

The plaintiffs have responded that genuine disputes of fact preclude entry of summary judgment. The plaintiffs have also filed a motion under Rule 56(f) seeking an enlargement of time within which to obtain discovery to adequately respond to Liberty's summary judgment motion. The court first addresses the Rule 56(f) motion.

Rule 56 provides:

> **(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions be taken or discovery be had or may make such other order as is just.

Fed. R. Civ. P. 56. Moreover,

> [t]he mere averment of such exclusive knowledge or control of the facts by the moving party is not adequate: the opposing party must show to the best of his ability what facts are within the movant's exclusive knowledge or control, what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules, and that he wishes to take advantage of these discovery procedures.
> The court may then order a continuance to permit discovery, or deny the motion for summary judgment without prejudice to its renewal after adequate time has elapsed to obtain the desired information.

6 James W. Moore et al., Moore's Federal Practice ¶ 56.24 (2d ed. 1995).

In support of its Rule 56(f) motion, the plaintiffs have attested by affidavit that they have been unable to discover

facts relevant to their claims against Liberty. For example, the plaintiffs seek "information concerning Liberty's relationship with the [Royal Solaris], TNT, and information concerning Liberty's knowledge of the conditions existing at the Royal Solaris at the time Liberty booked the Plaintiffs' accommodations at this hotel." Attorney Affidavit of Kelly Ayotte ("Ayotte Affidavit") at ¶ 4. The plaintiffs argue that their discovery attempts have been hindered by, inter alia, communication problems with Mexico, TNT's refusal to provide requested discovery beyond that directly relevant to the forum selection clause issue, Royal Solaris' pending motion to dismiss for lack of personal jurisdiction, and the fact that defendant Resort Condominiums International, Inc. and defendant RCI Travel have been granted additional time to respond to the plaintiffs' outstanding discovery requests. Finally, the plaintiffs argue that discovery does not close in this case until October 15, 1996.

The court finds that the plaintiffs' discovery efforts have been frustrated by a variety of circumstances, but not by a lack of diligence, and that this has significantly constrained their ability to oppose Liberty's pending motion for summary judgment. The court concludes that the plaintiffs have articulated a sufficient need for further discovery to invoke the "procedural

24

escape hatch" of Rule 56(f). See Jewell v. SCMI Corp., No. 94-359-JD, slip op. at 3-4 (D.N.H. July 11, 1995) (citing Mattoon v. City of Pittsfield, 980 F.2d 1, 7 (1st Cir. 1992)). Liberty's motion for summary judgment (document no. 26) is denied without prejudice and the plaintiffs' motion under Rule 56(f) (document no. 28) is granted. Once discovery has closed Liberty is granted 30 days within which to renew its motion based on the grounds already asserted or any other theory properly asserted under Rule 56.

III. DISCOVERY MOTIONS

Also before the court is the plaintiffs' motion to compel TNT to respond to outstanding discovery requests (document no. 27) and TNT's motion to stay substantive discovery against it pending resolution of its motion to dismiss (document no. 32).

The motions address the same dispute. TNT, despite the absence of a protective order or other court order limiting the scope of discovery, has objected to several of the plaintiffs' discovery requests on the ground that "the request goes far beyond the enforceability of TNT's forum selection clause, the only permitted subject of present discovery." See TNT's Response to Plaintiffs' Second Request For Production of Documents.

25

The ruling on TNT's motion on the forum selection clause issue, <u>supra</u>, disposes of both motions. TNT's motion for a stay of discovery (document no. 32) is moot. The court grants the plaintiffs' motion to compel discovery (document no. 27). TNT is ordered to answer the outstanding discovery requests within ten (10) days of this order as provided by Local Rule 37.1(b). All parties are encouraged to resolve future discovery disputes informally and without judicial intervention. The court will impose sanctions on any attorney or party it finds has acted unreasonably.

## Conclusion

The court has converted TNT's motion to dismiss under 12(b)(6) (document no. 5) into a motion for summary judgment under Rule 56. The court rules that the plaintiffs were never contractually bound to the forum selection clause printed in the brochure and, thus, their action against TNT may be litigated in this court. The motion is denied.

Liberty's motion for summary judgment (document no. 26) is denied without prejudice to renew within thirty (30) days following the the close of discovery, October 15, 1996. The plaintiff's Rule 56(f) motion (document no. 28) is granted.

26

The plaintiffs' motion to compel discovery (document no. 27) is granted. TNT's motion for a stay of discovery (document no. 32) is moot. TNT shall answer the propounded discovery within ten (10) days of the date of this order as provided by Local Rule 37.1(b).

The clerk shall schedule a status conference.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

January 31, 1996

cc:  Bruce W. Felmly, Esquire
     Wilfred J. Desmarais Jr., Esquire
     Margaret H. Nelson, Esquire
     Rodney E. Gould, Esquire
     Robert L. Hermann Jr., Esquire
     Andrew D. Dunn, Esquire